# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SANDERS v. COLEMAN.

### DECEMBER 7, 1899.

#### Absent, Cardwell, J.

1. "ACT OF GOD "—*What is Comprehended*—" *Illness.*"—All misfortunes and accidents arising from inevitable necessity, which human prudence could not foresee or prevent, including "illness," are comprehended under the expression "Act of God."

2. CONTRACTS—*Impossibility of Performance*—" *Act of God.*"—If the performance of any contract is rendered impossible by the act of God alone, such fact furnishes a valid excuse for its non-performance, and such provision inheres in every contract.

3. MARRIAGE—*Breach of Promise—Conditions Implied in Contract—Change of Health.*—A contract to marry is coupled with the implied condition that both parties remain in the enjoyment of life and health, and if the condition of the parties has so changed that the marriage state would endanger the life or health of either, a breach of the contract is excusable.

Error to a judgment of the Circuit Court of Lancaster county, rendered October 1, 1898, in an action of *assumpsit*, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*C. Harding Walker* and *J. W. Chinn, Jr.*, for the plaintiff in error.

*Downing & Smith* and *A. B. Chandler*, for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This is an action brought by the plaintiff to recover damages for an alleged breach by the defendant of his promise to marry her on the 27th day of April, 1898.

The declaration states with sufficient clearness and particularity the cause of action, and the demurrer was therefore properly overruled.

It appears that in December, 1897, the defendant, a man fifty-two years of age, received from the plaintiff, who was then twenty years old, a Christmas card. The defendant had met the plaintiff three years before, which was the first and only time he had seen her, though he had in the mean time sent her messages through mutual friends. A correspondence between the parties followed the receipt of the card, which resulted in a visit by the defendant to the plaintiff, in Princess Anne county, where she was teaching school, on the 19th of January, 1898. On this visit the defendant addressed the plaintiff, and in a few days was accepted, and the 27th day of April, 1898, fixed for the marriage.

The defendant filed a special plea in which he admits the engagement, and that the 27th of April, 1898, was agreed upon as the time for its consummation. The plea then denies that the defendant had broken his promise to marry the plaintiff, and avers that after making the promise, and before the time for its fulfilment, the defendant had, by the act of God, and without his own fault, become and was sick of a bodily disease which rendered him unfit to marry on the day agreed upon, and that, on the advice of his physician, he, in good faith, wrote to the plaintiff and asked for a postponement, to which she agreed; that afterwards, on the 27th day of April, 1898, he being still sick of his disease, and doubtful if he should ever recover from the same, wrote a letter to the plaintiff informing her of his continued sickness, and of his belief that he would be doing her an

injustice to marry her in his condition of health, and requesting the plaintiff for that reason to release him from his engagement.

It appears that about the middle of March, 1898, the defendant became afflicted with some trouble about the urinary organs, causing much uneasiness and suffering, and for which he was being treated by a physician, who, however, knew nothing of defendant's contemplated marriage. On the 4th day of April, 1898, the defendant took a drive with his friend and neighbor, Dr. Hubbard, into the country. On this occasion he was suffering very much, and described his symptoms fully to Dr. Hubbard, and told him that he expected to be married on the 27th of the month. The doctor told him that he was not in a condition to get married; that he was suffering from one of three diseases, either of which would be aggravated or made worse by marriage; that if he married in his then condition of health it might lead to serious results. The defendant then asked what could he do; that the preparations for his marriage were made. The doctor replied, "I will advise you to do what I would do myself under like circumstances. I would ask for a postponement until you can see the result of your symptoms. The doctor urged upon the defendant the importance to himself and the plaintiff of not marrying at the time then agreed upon. In consequence of this advice, the defendant on the same day wrote the plaintiff the following letter:

"WHITE STONE, VA., April 4, 1898.

"Dear Miss Gertrude:

"I deeply regret that circumstances over which I have no control will prevent me from keeping my engagement on the 27th of this month. Trusting you will pardon me, I remain

"Yours, &c.,

"R. M. SANDERS."

Upon the receipt of this letter, the plaintiff demanded an explanation, in response to which the defendant wrote as follows:

"MIAMI, VA., April 7, 1898.

" Dear Miss Gertrude:

" Your letter received to-day, and I hasten to reply. The only explanation I can give you is this: I am not in a condition at this time to get married, and my physician advised me to put it off a while longer, which I hope will meet with your consent."

" Hastily yours,

" R. M. SANDERS."

The plaintiff replied to this letter consenting to postpone the marriage until the defendant recovered. Subsequently, the defendant wrote the following letter:

"MIAMI, VA., April 27, 1898.

" Dear Miss Gertrude:

" I received your letter to-day, and will answer at once. You can't imagine what I have suffered about this affair, and you seem to think some one else has something to do with it, but I can assure you that such is not the case, and that I was honest with you all the time, but I thought two wrongs did not make a right, and that I would be doing you a greater wrong in marrying you, considering my condition, than in not doing it, and for this reason, and this alone, I am going to ask you to release me from the engagement. I could write more, but think this is sufficient. But I will ask before closing that you will think kindly of me, as I will always do of you.

" Hastily, your friend,

" R. M. SANDERS."

To this letter there was no reply, but in a few days thereafter the plaintiff was consulting counsel, and in June following this suit was brought.

In the progress of the trial a number of questions were passed upon, which have been brought before us by bills of exception, but in the view we take of this case it is only necessary to consider the assignment of error which relates to the action of the lower court in refusing to set aside the verdict in favor of the plaintiff as contrary to the law and the evidence.

It has been argued with much force that the letters already quoted, which are relied upon by the plaintiff as constituting the breach, are insufficient to show a refusal on the part of the defendant to perform his promise. Without expressing an opinion on that question, but conceding, for the purposes of this case, that the plaintiff had a right to so regard them, we are brought to a consideration of the defendant's plea that, after the making of the promise and before the time for its fulfilment, he had by the act of God, and without his own fault, become sick of a bodily disease which rendered him unfit to marry on the day agreed upon.

Under the expression " the act of God " is comprehended all misfortunes and accidents arising from inevitable necessity which human prudence could not foresee or prevent. Hence it is held that " illness," being beyond the power of man to control or prevent, is the act of God. Story on Bailments, secs. 25, 511; *Fish* v. *Chapman*, 2 Ga. 349; *Gleason* v. *Va. M. R. R. Co.*, 140 U. S. 435.

It can no longer be doubted that, if the performance of a contract is rendered impossible by the act of God alone, such fact will furnish a valid excuse for its non-performance, and such a stipulation will be understood to be an inherent part of every contract. This principle, it would seem, should apply with peculiar force to a marriage contract, the performance of which, owing to causes subsequently intervening, and altogether independent of any default of the party, might result in consequences disastrous to the life or health of the parties, or either of them. We hold, therefore, that a contract to marry is

coupled with the implied condition that both of the parties shall remain in the enoyment of life and health, and if the condition of the parties has so changed that the marriage state would endanger the life or health of either, a breach of the contract is excusable. *Allen* v. *Baker*, 86 N. C. 91; *Shackelford* v. *Hamilton*, 93 Ky. 80; Bishop on Marriage and Divorce, sec. 219.

In the case at bar the evidence, as to which in our opinion there is no real conflict, shows that there was a predisposition, in the defendant's family, to physical trouble of the kind that had developed with him; that his father had died with a similar disease, and a brother with urinary trouble; that after his engagement with the plaintiff, and before the time fixed for the marriage, the defendant had, without fault on his part, developed and was suffering with a grave malady, involving the urinary organs, which had continued and kept him constantly under the advice and treatment of a physician up to the time of the trial; that he had cystitis, with probable inflammation of the urethra, complicated with enlargement of the prostate gland, and that an indulgence in sexual intercourse would aggravate his disease, and likely shorten his life; and that it would be, not only a wrong and injustice to the defendant, but also to the plaintiff for him to marry in his condition of health. Marriage is assumed in law to be made for mutual comfort. The condition of the defendant precludes any hope of mutual comfort from cohabitation. On the contrary, an indulgence in sexual intercourse would aggravate his disease, and enhance the chances of a fatal result. As said by a learned judge, " I desire to speak with all reserve; but to possess the lawful means of gratifying a powerful passion with the alternative of abstaining or perilling life, is indeed to incur a risk of intense misery, instead of mutual comfort."

Our conclusion upon the law and the evidence is that the defendant acted throughout with good faith, and 'that the un-

happy circumstances in which he found himself justified the alleged breach of his contract to marry the plaintiff.

For these reasons the judgment of the lower court must be reversed, the verdict of the jury set aside, and a new trial awarded, to be had in accordance with the views expressed in this opinion.

*Reversed.*