MEYER BROS. HAY AND GRAIN CO., A CORPORATION, PLAINTIFF-APPELLEE, v. NATIONAL MALTING CO., DEFENDANT-APPELLANT.

Submitted October 3, 1939—Decided March 28, 1940.

Before Justices TRENCHARD, CASE and HEHER.

For the plaintiff-appellee, *Peter Cohn.*

For the defendant-appellant, *Evans, Smith & Evans.*

The opinion of the court was delivered by

TRENCHARD, J. This is the appeal of the defendant below from a judgment rendered against it in the District Court by the judge, sitting without a jury.

The state of the case, as settled by the trial judge, discloses that the facts as found by the trial court are, briefly stated, as follows:

Plaintiff-appellee, prior to September 19th, 1938, and from time to time, rented of the defendant several garages, all owned and controlled by the defendant and all covered by a common roof. They were rented for the purpose of storing hay, grain and peanut shells collected by the plaintiff in its business, and which were required to be stored in a dry place, all of which was known to the defendant who, in order to induce plaintiff to become a tenant of such garages, expressly represented to the plaintiff that defendant "would cause said garages to be repaired and put in first-class condition" to remedy a prior leaky and defective condition of the roof. Following this representation and assurance the plaintiff was told by the defendant "that said garages had been repaired and were in perfect shape," upon which representation plaintiff thereupon duly rented the garages, and they were immediately utilized by plaintiff for the purposes intended, to wit, the storage of hay, straw and peanut shells.

On September 19th, 1938, there was stored in the garages, thirty-five tons of peanut shells, sixty tons of straw, and 130 tons of hay. Several months prior to that date, namely, on June 8th, 1938, the defendant was duly advised by plaintiff that the roof of these garages leaked on "at least two occasions" after the plaintiff had moved in. Whereupon, instead of having a regular roofer repair the same, defendant dispatched its handy man, Otto, for that purpose, and the testimony tended to show, and the trial judge found, that such work as he did was done "negligently;" and it further appeared without contradiction that defendant was at all times in control and possession of the garages in question, and the roof thereof. On September 19th, 1938, a severe rainstorm occurred, and the roof leaked and plaintiff's merchandise was damaged, and "everything was spoiled" and "the garages were filled like a flood" and that thereby plaintiff suffered loss in the sum of $300.

Judgment was therefore accordingly rendered in plaintiff's favor for $300, and the defendant appeals.

We now deal with the points made in the defendant's brief which seem to be based upon grounds of appeal.

We think there was abundant evidence upon which the trial

court based its conclusions that repairs were negligently made by appellant. Appellant argues that plaintiff's damages were occasioned by an "Act of God."

An act of God comprehends all misfortunes and accidents arising from *inevitable necessity which human prudence could not foresee or prevent,* and its significance as defense is that when it is the *sole cause of damage it exempts defendant from liability for negligence. Clark* v. *Public Service Electric Co.,* 86 *N. J. L.* 144; *Pleasure Beach Park Co.* v. *Bridgeport Dredge and Dock Co. (Conn.),* 165 *All. Rep.* 691.

In the instant case, the settled state of the case indicates that not only would human prudence *foresee or prevent* the damage but ordinary care would have dictated that repairs to the roof be made by a competent person, and not by an incompetent person in a negligent manner, as found by the trial judge upon competent evidence.

Moreover, the rule imposing liability on defendant, although another efficient cause concurs with defendant's negligence, applies where an act of God is the concurring cause.

The applicable rule as to the duty of the defendant in the present case is this: It is the landlord's duty to exercise reasonable care to keep the roof in such repair that its condition will not be a source of injury to the tenants underneath. *Perry* v. *Levy,* 87 *N. J. L.* 670; *Farley* v. *Mikulsky,* 101 *Id.* 127; *Bolitho* v. *Mintz,* 106 *Id.* 449; *Briggs* v. *Pannaci,* 106 *Id.* 541; *Polizzano* v. *Mapes Holding Co.,* 115 *Id.* 352.

The facts which give rise to the application of the foregoing rules of law were found by the trial judge upon what we think was ample evidence. Moreover, in the absence of anything to the contrary, a fact found by the District Court is presumed to rest upon competent proof, and the appellate court will also assume a finding of fact that will support the judgment. *Gare* v. *Gumina,* 117 *N. J. L.* 30; *Pollack* v. *New Jersey Bell Telephone Co.,* 116 *Id.* 28.

The contention that appellant had no knowledge or notice of the state of disrepair is without foundation, and entirely ignores the testimony of appellant's representative that on at least two occasions plaintiff duly complained of roof leakage, and this was several months before the damage was done.

Strangely enough, the appellant now complains that the court admitted incompetent evidence. Manifestly there is no merit in this contention. This testimony was elicited by the defendant itself from its own witness, and it was not objected to at any time by any party, and no exception was taken thereto. It therefore becomes unnecessary for us to consider whether or not it was incompetent.

Lastly, it is said that the court improperly awarded judgment in the sum of $300. Not so. The plaintiff's books were duly received in evidence and each and every transaction as set forth in its bills duly substantiated.

The judgment below will be affirmed, with costs.