Elmer Hoggatt, Plaintiff-Appellant, v. May Melin and Don Melin, Administrators of the Estate of Warren Tullock, et al., Defendants-Appellees.

Gen. No. 10,311.

Third District.

February 21, 1961.

Reno & O'Byrne, of Champaign, for appellant.

Barth, Phillips, Phebus & Tummelson, of Urbana (Hurshal C. Tummelson, of counsel) for appellees.

REYNOLDS, J.

This cause grows out of a collision at a street intersection in the City of Champaign, Illinois, between an automobile driven by Warren Tullock and an automobile driven by the plaintiff. The plaintiff had stopped his car at the intersection and was not moving when the automobile driven by Tullock crashed into the rear of his car and drove it into the rear of a truck. The plaintiff was injured and his car badly damaged. Warren Tullock was found slumped over on his side in the front seat of his automobile, bleeding about the head, and apparently unconscious. An ambulance took Tullock to the hospital but he was dead on arrival. There is no evidence to show that Tullock at any time sounded any alarm or applied his brakes before the collision and apparently his car traveled in a straight line to the point of collision.

Plaintiff brought suit against May Melin and Don Melin, Administrators of the Estate of Warren Tullock and Alfred W. Osterhoff, the employer of Warren Tullock, for personal injuries and damages to his car. The complaint was in four counts, two against the administrators and two against the employer, Counts I and III for personal injuries, and Counts II and IV for damages to plaintiff's automobile.

The case was tried before a jury and the jury returned verdicts finding for the defendants on each count, and judgment was entered upon the verdicts. The plaintiff appeals to this court.

The defendants denied generally the allegations in the complaint and as a special defense to each count, pleaded that the deceased Warren Tullock, prior to the collision, suffered a heart attack causing him to lose the ability to control the car he was driving and that the collision and the plaintiff's damages were caused by an Act of God.

For grounds for his appeal the plaintiff contends that the Act of God defense of the defendants was an affirmative defense and that the defendants failed to prove such defense by a preponderance or greater weight of the evidence. The plaintiff further complains of the giving of defendants' instructions No. 1, 2, 3, 4 and 6.

The place of the collision was a busy intersection in the City of Champaign, Prospect Avenue and Springfield Avenue. Plaintiff was headed south on Prospect Avenue and had stopped at the stop sign at Springfield Avenue. The day was clear and the pavement was dry. The facts concerning the collision are not in dispute. While the speed of the car driven by Tullock is not definitely established, it was such as to drive the car of the plaintiff into the rear of a truck in front of him, and seriously damage plaintiff's car. The only question of fact presented is whether Tullock suffered a heart attack, lost control of his car,

26

and the collision and the resulting injuries and damages were the result of an Act of God. At the request of the County Coroner, an autopsy was performed on Tullock by Dr. Max Appel, a pathologist. Dr. Appel testified that he had performed some five or six thousand autopsies. He found that Mr. Tullock had evidence of a long standing heart disease. He found marked thickening of the coronary arteries and in addition the left coronary artery was completely blocked by a blood clot, which Dr. Appel said was a relatively fresh occurrence. This blood clot Dr. Appel called a coronary thrombosis or coronary occlusion. Dr. Appel's autopsy disclosed evidence of a previous heart attack evidenced by an extensive area of scar tissue in the left ventricle of the heart. Dr. Appel said he found acute edema of the lungs, that is, a pulmonary edema, or fluid in the lungs. He also found a fracture of the 7th right rib and the jagged edge of this fracture had caused a large laceration of the liver, severed some blood vessels and there was about 1000 cc's of blood in the abdominal cavity. Dr. Appel's diagnosis was that death was due to the acute pulmonary edema resulting from the acute coronary occlusion. He testified that the effects of this occlusion are sudden and immediate, and when the heart could not get sufficient blood for oxygen for as long as 30 to 45 seconds, the heart muscles can stop beating and death could be instantaneous, or there may be sudden collapse and loss of consciousness. Dr. Appel found no evidence that any direct injury, such as the laceration of the liver, to indicate that the injury caused the coronary occlusion.

Dr. Jack D. Hull, a heart specialist, testified for the plaintiff. Dr. Hull stated he had treated or diagnosed in cases involving the heart and cardio-vascular system and that such treatment or diagnosis would run into several thousand during his practice. He did not examine Mr. Tullock at any time, and his testimony

was in response to hypothetical questions. He did not disagree with Dr. Appel that a coronary occlusion resulting in pulmonary edema, caused the death, but his opinion differed in that he stated that the occlusion could have been caused by the laceration of the liver and the head injury. Dr. Hull also testified that in his opinion the occlusion could have been triggered by sudden fright, anxiety, or emotional disturbance, and assuming the injury to the liver and the head injury, that the occlusion occurred after the collision.

The testimony of these two specialists raises a question of fact, namely, when did the occlusion with the resulting pulmonary edema take place? Dr. Appel's testimony, with the positive statement that the injury to the liver and the consequent loss of blood did not cause the coronary occlusion would sustain the defendants' defense that the collision was due to the Act of God. Dr. Hull's testimony refutes this position and has the driver Tullock sustaining the occlusion after the collision, which would thus have Tullock in full command of his faculties and capable of controlling his vehicle prior to and at the time of the collision.

██ ██ Our courts have repeatedly held that on a question of fact, the trial court or the reviewing court may not substitute its judgment for that of a jury upon controverted questions of fact; Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 125 N.E.2d 47; Ney v. Yellow Cab Co., 2 Ill.2d 74, 117 N.E.2d 74; Manion v. Chicago, Rock Island & Pacific Ry. Co., 12 Ill. App.2d 1, 138 N.E.2d 98; Koch v. Lemmerman, 12 Ill. App.2d 237, 139 N.E.2d 806; Hanck v. Ruan Transport Corp., 3 Ill. App.2d 372, 122 N.E.2d 445. Only in cases where the verdict of the jury is clearly and palpably against the manifest weight of the evidence is the reviewing court justified in reversing the decision of the jury on a question of fact. In this case, the testimony of

28

Dr. Appel that the injury to the liver of the driver Tullock did not cause the coronary occlusion resulting in the pulmonary edema causing death within a few seconds, presents the question of fact, namely, was the collision due to the sudden heart attack which caused Tullock to lose control of his vehicle and drive into the vehicle of the plaintiff. Dr. Hull's testimony, which was to the effect that the heart attack could have occurred after the collision, pin-points the question of fact. If, as said before, the attack occurred before the collision, then it could have been an Act of God. On the other hand, if it occurred after the collision, then it was not an Act of God. The jury, by its verdict, found that it was an Act of God. On the record before us, this court would not be justified in overruling the verdict of the jury.

■ The plaintiff complains that the trial court erred in the giving of Defendants' Instructions No. 1, 2, 3, 4 and 6. An examination of the abstract shows that only those instructions complained of by the plaintiff are set out, and as to those, the reasons for his objections are not specified. Parties have no right to set forth only the instructions given on one side of the case and object to those instructions, leaving the court to go to the record to determine if others given supply the omissions or cure defects. City of Roodhouse v. Christian, 158 Ill. 137, 41 N.E. 748. Our courts have held that the instructions must be considered as a series and when only the instructions objected to are set out in the abstract of record, that requires the reviewing court to go to the record to determine what instructions were given. This has been condemned. Richman Chemical Co. v. Lowenthal, 16 Ill. App.2d 568, 149 N.E.2d 351; Rubinstein v. Fred A. Coleman Co., 22 Ill. App.2d 116, 159 N.E.2d 379. However, in order to fully and fairly consider the grounds for appeal in this case, we have examined the record.

29

We find fifteen instructions were given in the case, eight on behalf of the plaintiff, and seven on behalf of the defendants.

■ Taking up the objection to Defendants' Instruction No. 1, the plaintiff says that it singles out one fact or circumstance and states that it raises no presumption of negligence or liability. This was condemned in Minnus v. Friend, 360 Ill. 328, 196 N.E. 191, on the ground that it tended to confuse and mislead the jury. In that case a tendered instruction was refused and the court held it was not reversible error to refuse to give the instruction. In the case of Paris v. East St. Louis Ry. Co., 275 Ill. App. 241, an instruction almost identical with Defendants' Instruction No. 1 was given, and on appeal this instruction was approved. It would appear that each case must depend upon the facts, as to whether a single facet or fact of the case can be so singled out. In this case, the collision and the injuries of the plaintiff are not in dispute. The only dispute or controversy is whether this collision and the injury to the plaintiff was by the negligence of Tullock or by an Act of God. It is hard to see anything in this instruction that would tend to confuse or mislead the jury, taking into consideration Plaintiff's Instruction No. 1, which is a very complete and detailed instruction telling the jury what the plaintiff claims, and all the grounds of defense claimed by the defendants. Plaintiff's Instruction No. 2 defines negligence, Plaintiff's Instructions No. 3, 4 and 5 state the requirement of the proof necessary for the special defense of the defendants, and the proof necessary on the part of the plaintiff. While Defendants' Instruction No. 1 may be subject to some criticism, in view of the undisputed facts in this case and the other instructions given, we can not hold this instruction to be reversible error.

30

Plaintiff objects to Defendants' Instruction No. 2 on the ground that it is confusing and misleading. No authorities are cited in support of this contention. This instruction was approved in Craw v. Chicago City Ry. Co., 159 Ill. App. 100. With very little change it was approved in Chicago Union Traction Co. v. Fortier, 205 Ill. 305, 68 N.E. 948.

▪ The objection to Defendants' Instruction No. 3, which is a definition of an Act of God, is that it is a masterpiece of vacuity. This instruction is in the following language: "You are instructed that 'An Act of God' includes all misfortunes and actions arising from the inevitable necessity which human prudence could not foresee or prevent and that sudden illness, or death, rendering the driver of a motor vehicle incapable of controlling or directing his motor vehicle, if unforeseeable and beyond the power of human agency to prevent, is an Act of God." The plaintiff cites an instruction given in McClean v. Chicago Great Western Railway Co., 3 Ill. App.2d 235, 121 N.E.2d 337, which also defines an Act of God. The instruction given in that case is more general than the one complained of here, but in the main the same definition is made. The definition set out in Defendants' Instruction No. 3, is substantially the same instruction approved in other jurisdictions in Fish v. Chapman, 2 Ga. 349, 356, 46 Am. Dec. 393; Early v. Hampton, 15 Ga. App. 95, 82 S. E. 669; Sanders v. Coleman, 34 S. E. 621, 622, 97 Va. 690, 47 L. R. A. 581; Meyer Bros. Hay & Grain Co. v. National Malting Co., 11 A.2d 840, 841, 124 N.J.L. 321; and in Words and Phrases, Vol. 2, pp. 282. In those cases, the words complained of by the plaintiff, "necessity" and "inevitable necessity" are approved by the courts. In the case of Eleason v. Western Cas. & Sur. Co., 35 N.W.2d 301, 303, 254 Wis. 134, an "act of God" is defined as meaning such inevitable

31

act as cannot be prevented by human care, skill or foresight. Here, the defendants sought to tailor the language defining "Act of God" to the particular circumstances of this case. We see no error in this instruction.

■ Objection to Defendants' Instruction No. 4 is on the ground that it fails to set forth the requirement that the defendants must establish their affirmative defense that the injury was an Act of God, by a preponderance of the evidence. This is true, yet the point is fully covered by Plaintiff's Instruction No. 3, and taking the instructions as a series, the jury was fully informed on this point.

■ Further objection is made to the Defendants' Instruction No. 6 on the theory that the instruction mixed negligence of the defendant Tullock with an Act of God. Undoubtedly, this instruction could have been left out, but we fail to see how the plaintiff is prejudiced by giving it. If anything, it would be to aid the plaintiff and not the defendants, if the jury had any doubt as to the affirmative defense that the collision was caused by an Act of God.

We believe that the jury was fairly instructed and informed as to the issues in the cause. The judgment will be affirmed.

Affirmed.

CARROLL, P. J. and ROETH, J., concur.