Filed 3/23/10                    NO. 4-09-0407

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

SHAVONNE L. EVANS,                          )    Appeal from
          Plaintiff-Appellant,              )    Circuit Court of
          v.                                )    Macon County
BRAD BROWN, Special Administrator for       )    No. 06L122
the Estate of LYNN R. ROMANN, Deceased;     )
and TURBO PLUS, INC.,                       )    Honorable
          Defendants-Appellees.             )    Albert G. Webber,
                                            )    Judge Presiding.
_____

          JUSTICE STEIGMANN delivered the opinion of the court:

          In September 2006, plaintiff, Shavonne L. Evans, sued

defendants, Brad Brown, special administrator for the estate of

Lynn R. Romann, deceased, and Turbo Plus, Inc. (Turbo), claiming

that in February 2006, Romann, acting as Turbo's agent, negli-

gently operated his company car, which proximately caused her

serious injuries.

          In October 2008, defendants moved for summary judgment

under section 2-1005 of the Code of Civil Procedure (735 ILCS

5/2-1005 (West 2008)), alleging that Romann's unexpected and

unforeseen loss of consciousness, which caused him to lose

control of the car he was driving, was an "act of God."  Follow-

ing a May 2009 hearing, the trial court granted defendants'

summary-judgment motion.

          Plaintiff appeals, arguing that (1) summary judgment

was not appropriate based on an act of God because she had

established a prima facie case of negligence and (2) Romann's

statement that he "fell asleep" prior to the collision created a

genuine issue of material fact.  Because we agree with both of these arguments, we reverse and remand for further proceedings.

## I. BACKGROUND

### A. The Events Surrounding the Collision

The following facts were gleaned from the parties' pleadings and other supporting documents filed with the trial court.

On February 11, 2006, Romann, who was 72 years old and worked as a used car salesman for Turbo, informed Turbo's owner, Charles Landreth, that he was going to Decatur.  Landreth stated that although he had, on previous occasions, allowed Romann to drive cars owned by Turbo for personal errands, he did not (1) give Romann permission to drive a Turbo car to Decatur or (2) know, as he later discovered, that Romann intended to visit his girlfriend in Decatur.

That same evening, plaintiff was driving on a road in Decatur, which she described as a four-lane city street with two lanes in each direction.  As plaintiff drove eastbound in the right lane, she noticed that a car traveling westbound--later determined to have been driven by Romann--abruptly swerved over the centerline and hit another car traveling in the eastbound lane next to her.  The eastbound car then hit plaintiff's car, which caused plaintiff to hit her head on the driver's side door window.  As a result, plaintiff suffered serious injuries.

Because the collision rendered Romann's car inoperable, he called a friend and coworker, Paul Eldridge, to drive him

home.  In that phone call, Romann said that he "went to sleep" and had a car accident.  When Eldridge arrived, Romann told him that (1) he did not know what happened and (2) he had "blacked out, fell asleep."  Eldridge tried to persuade Romann to go to the hospital.  Romann refused, stating that the car's air bags had protected him and "he was fine."  Eldridge drove Romann home, and during the drive, Eldridge noticed Romann's chest had been bruised, and Romann complained that his chest was "sore."  After leaving Romann's home, Eldridge called Landreth to (1) inform him about the collision and (2) recommend that he send someone to check on Romann.

Landreth called Romann that same night and asked him about the collision.  Romann told Landreth that he had "blacked out" and did not remember anything.  Landreth urged Romann to seek medical treatment, but he refused.  Later that same night, another coworker, Jennifer St. Clair, visited Romann at his home.  St. Clair attempted to give Romann some food, but he told her that he was (1) not hungry, (2) not feeling well, and (3) going to bed.  The following morning, St. Clair informed Landreth that Romann was not breathing.  Landreth went to Romann's home, where he determined that Romann had died.

B. The Cause of Romann's Death

On February 13, 2006, William K. Drake, a board-certified pathologist, performed an autopsy on Romann.  In his deposition, Drake opined to a reasonable degree of medical certainty that the February 11, 2006, collision and Romann's eventual

- 3 -

death, was the "logical consequence" of a heart attack that Romann had suffered about a week before his death. In particular, Drake explained that Romann had a small, untreated heart attack, which resulted in the gradual degradation of his heart-muscle wall due to oxygen deprivation that occurred over a 7- to 10-day period. The resulting compromised tissue then ruptured, causing Romann's instantaneous death.

Drake also opined that just prior to the collision, Romann suffered a "Stokes Adams" attack--that is, a sudden change in cardiac rate or rhythm output--which was caused by his earlier heart attack. Drake further explained that this attack caused a sudden drop in Romann's blood pressure, which resulted in Romann's experiencing a temporary loss of consciousness.

At Drake's deposition, plaintiff questioned Drake regarding the pain that Romann's heart attack would have inflicted, as follows:

"[PLAINTIFF'S COUNSEL:] *** [T]he event that took place approximately [7] to [10] days before [Romann's] death, can you describe *** what that would have consisted of?

[DRAKE:] *** I would have thought that [Romann] would have complained of chest pain. *** [S]ince it[ was] a small heart attack, he should have had chest pain. He would have had pain somewhere. It might have been in his jaw or his shoulder ***, but [Romann]

- 4 -

should have had some discomfort as a result of this heart attack.  All people do.  But we had no history of it.

* * *

[PLAINTIFF'S COUNSEL:]  *** [W]ould this have been severe pain [or] light pain[?  I]s there any way to tell?

[DRAKE:]  *** [T]he pain is always variable, but people express this as a squeezing, pressure-type discomfort that is very unpleasant to them.  ***  So we would assume that [Romann] would have had these symptoms. As a matter of fact, [Romann] would *** have had symptoms.

Now, [Romann] may [have been] stoic.  He may have thought it was indigestion, you know, all kinds of other things.

* * *

[PLAINTIFF'S COUNSEL:]  And those would have been the type of symptoms *** that a person should have sought medical care [for]?

[DRAKE:]  Ordinarily that's correct. But people don't, I will assure you.  ***

* * *

[PLAINTIFF'S COUNSEL:]  And it was inevitable in your opinion that he had that

pain[?]

[DRAKE:]  He had this pain.  He would have had pain[.]

[PLAINTIFF'S COUNSEL:]  If [Romann] would have sought medical care at that time, then intervention could have taken place and the [heart-muscle degradation] may not have developed?

                    *  *  *

[DRAKE:]  ***  [I]f [Romann] had presented in our emergency room, he would have been recognized[.]  ***  We do everything in our power to prevent this type of event from occurring.  ***  This [was] a small [heart attack at] the back of the heart *** so it's one that I suppose [Romann] could have confused with indigestion.

[PLAINTIFF'S COUNSEL:]  This pain that you're talking about, that would have lasted over what period of time in your opinion?

[DRAKE:]  I think [Romann would have had] pain through this whole period."

In response to further questioning by defense counsel regarding Romann's death, Drake stated, in pertinent part, that (1) Romann would not have detected that he had a heart attack; (2) Romann would not have expected the Stokes Adams attack; (3)

- 6 -

Romann complained of neck pain after the collision, which was "very likely" caused by his heart attack; and (4) it was "very likely" that Romann experienced pain on more than one occasion during the 7- to 10-day period following his heart attack.

## C. Procedural History

### 1. Defendants' Summary-Judgment Motion

In October 2008, defendants moved for summary judgment based upon an "act of God." Specifically, defendants claimed that an act of God--that is, Romann's unexpected and unforeseen loss of consciousness--was the sole and proximate cause of the collision.

### 2. Plaintiff's Memorandum of Law in Opposition to Defendants' Summary-Judgment Motion

In December 2008, plaintiff filed a memorandum of law in opposition to defendant's summary-judgment motion, in which she set forth Eldridge's deposition testimony that Romann told him that prior to the collision, he "blacked out, fell asleep." Plaintiff also alleged that because the uncontradicted evidence showed that the collision with Romann--who had been driving in the opposing lane--occurred on her side of the road, she had established a prima facie case of negligence. Thus, plaintiff asserted that defendants' claim of an affirmative defense based upon an act of God merely raised a genuine issue of material fact--namely, whether her injuries were caused by Romann's negligence or an act of God.

In the alternative, plaintiff asserted that summary judgment was inappropriate because issues of material fact

remained regarding whether Romann ignored symptoms related to his heart attack, which precluded any act-of-God defense. In support of her argument, plaintiff relied on Drake's deposition testimony that Romann would have had heart-attack symptoms prior to the collision and that such symptoms would have caused a reasonable person to seek medical care.

   3. The Hearing on Defendants' Summary-Judgment Motion

At the December 2008 hearing on their motion for summary judgment, defendants argued that because (1) Drake testified that Romann's Stokes Adams attack was "unexpected" and (2) no medical evidence was presented showing Romann had prior blackouts, summary judgment was appropriate. In response, plaintiff argued consistently with her memorandum in opposition to the summary-judgment motion, adding that although Romann told Landreth that he had blacked out, he had also told Eldridge that he had fallen asleep prior to the collision.

After considering the parties' evidence and counsel's arguments, the trial court took the matter under advisement. In May 2009, the court entered a docket entry order in which it stated, in pertinent part, the following:

> "The accident occurred on February 11, 2006,
> when Romann's vehicle crossed the centerline
> of a four[-]lane city street in Decatur and
> impacted the [p]laintiff's vehicle which was
> traveling in the opposite direction. Romann
> told a co[]worker at Turbo who arrived at the

- 8 -

accident scene [that] he had a 'blackout, [fallen] asleep' just prior to the accident. He refused any medical care. The following day[,] Romann was found dead at his home. *** Drake testified that Romann might have experienced pain or discomfort in his chest, back, shoulder, arm, or jaw. Its nature[,] intensity[,] and duration cannot be known. Further, Romann was 72 years old at the [time] in question and it is common for persons of that age to experience similar pain of non-cardiac origin. Only in retrospect can Romann's sudden loss of consciousness be seen as unforeseeable and unpreventable. *** Plaintiff does not so much dispute any facts here as to attempt to impose on Romann a duty of medical self-diagnosis unsupported by case authority. As any claim against [defendants] is based on the alleged negligence of Romann, so it too must fail. Summary judgment is therefore granted in favor of *** [d]efendants and against *** [p]laintiff." This appeal followed.

## III. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

### A. Summary Judgment and the Standard of Review

The purpose of a summary-judgment proceeding is not to

try an issue of fact but, instead, to determine whether a genuine issue of material fact exists. Village of Montgomery v. Aurora Township, 387 Ill. App. 3d 353, 360, 899 N.E.2d 567, 573 (2008). Although summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. Henry v. Panasonic Factory Automation Co., 396 Ill. App. 3d 321, 327, 917 N.E.2d 1086, 1091 (2009). Thus, "[s]ummary judgment is appropriate where the pleadings, depositions, admissions[,] and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co., 227 Ill. 2d 102, 106, 879 N.E.2d 305, 308 (2007); see 735 ILCS 5/2-1005(c) (West 2008).

"'The burden of proof and the initial burden of production in a motion for summary judgment lie with the movant.'" Kleiss v. Bozdech, 349 Ill. App. 3d 336, 349, 811 N.E.2d 330, 340 (2004), quoting Pecora v. County of Cook, 323 Ill. App. 3d 917, 933, 752 N.E.2d 532, 545 (2001). "Where the facts could lead a fair-minded person to draw more than one conclusion or inference, summary judgment must be denied." Deliberto v. Stahelin, 171 Ill. App. 3d 355, 357, 525 N.E.2d 584, 585 (1988).

If a defendant raises an affirmative defense, his pleading and supporting documentation need only establish his

factual position on that affirmative defense.  Willett v. Cessna Aircraft Co., 366 Ill. App. 3d 360, 369, 851 N.E.2d 626, 634 (2006).  Although a plaintiff is not required to prove her case at the summary-judgment stage, to survive a summary-judgment motion as the nonmoving party, she must present a factual basis that would arguably entitle her to a judgment.  Fichtel v. Board of Directors of River Shore of Naperville Condominium Ass'n, Hillcrest Management Co., 389 Ill. App. 3d 951, 956, 907 N.E.2d 903, 907 (2009).  We review de novo the trial court's grant of summary judgment.  Reppert v. Southern Illinois University, 375 Ill. App. 3d 502, 504, 874 N.E.2d 905, 907 (2007).

### B. Plaintiff's Claims That the Trial Court Erred by Granting Defendants' Summary-Judgment Motion

Plaintiff argues that the trial court erred by granting summary judgment.  Specifically, plaintiff contends that (1) summary judgment was not appropriate to preclude liability based on an act of God because she had established a prima facie case of negligence and (2) Romann's statement that he "fell asleep" prior to the collision created a genuine issue of material fact.  We address plaintiff's contentions in turn.

### 1. Plaintiff's Contention That She Established a Prima Facie Case of Negligence

Prior to reaching the merits of plaintiff's first contention, we address her claim that the undisputed evidence presented in this case established a prima facie case of negligence against Romann.  In support of that contention, plaintiff relies on the supreme court's decision in Osborne v. O'Brien, 114

- 11 -

Ill. 2d 35, 499 N.E.2d 455 (1986).

In _Osborne_, 114 Ill. 2d at 37, 499 N.E.2d at 456, the plaintiff sued the defendant for injuries he sustained while he was a passenger in a van that the defendant struck with his car. The undisputed facts revealed that the defendant was driving to work on a curvy, hilly, two-lane road, which descended 600 feet. _Osborne_, 114 Ill. 2d at 37, 499 N.E.2d at 456. As the defendant drove down the hill, his car slid on some ice, and despite his attempts to take corrective action, he crossed the centerline of the road and hit the van that had been stopped in the opposing lane. _Osborne_, 114 Ill. 2d at 37-38, 499 N.E.2d at 456. The record also showed that although the weather was damp, the defendant had no reason to suspect that the road would be icy. _Osborne_, 114 Ill. 2d at 37, 499 N.E.2d at 456.

Following a trial in which the jury returned a verdict in the defendant's favor, the plaintiff filed a posttrial motion requesting entry of a judgment notwithstanding the verdict or in the alternative, a new trial. _Osborne_, 114 Ill. 2d at 39, 499 N.E.2d at 457. The trial court later denied the plaintiff's posttrial motion. _Osborne_, 114 Ill. 2d at 39, 499 N.E.2d at 457. The supreme court affirmed and, as part of its analysis, determined that the defendant had introduced evidence sufficient to submit to a jury on the question of whether the skid of his car was the result of some cause other than his negligence. _Osborne_, 114 Ill. 2d at 42, 499 N.E.2d at 458. In rejecting the plaintiff's argument that the evidence overwhelmingly favored granting

- 12 -

her posttrial motion, the supreme court distinguished the two cases that the plaintiff relied upon (Sughero v. Jewel Tea Co., 37 Ill. 2d 240, 226 N.E.2d 28 (1967), and Calvetti v. Seipp, 37 Ill. 2d 596, 227 N.E.2d 758 (1967)), as follows:

> "Simply stated, the rationale of Sughero and Calvetti is that upon a plaintiff's showing that a collision between vehicles occupied by a plaintiff and driven by a defendant occurred on the plaintiff's side of the road, the plaintiff has made a prima facie case of the defendant's negligence. It is then incumbent on the defendant to adduce evidence to show that his vehicle was in that position because of some reason other than his own negligence. If he makes a showing sufficient to raise an issue of fact, the question of his negligence is for the jury." Osborne, 114 Ill. 2d at 41, 499 N.E.2d at 458.

In this case, the uncontradicted evidence showed that on the evening of February 11, 2006, (1) plaintiff was driving eastbound on a four-lane city street at the same time Romann was driving westbound on that same street, (2) Romann's car abruptly swerved over the centerline of the road and hit another car traveling eastbound, (3) that collision caused the eastbound car to collide with plaintiff's car, and (4) plaintiff sustained injuries as a result of the collision. Thus, we agree with

plaintiff that the supreme court's decision in Osborne controls.
Accordingly, plaintiff has established a prima facie case of
negligence.

### 2. Plaintiff's Contention That Summary Judgment Was Not Appropriate To Preclude Liability Based on an Act of God

Plaintiff first contends that summary judgment was not
appropriate to preclude liability based on an act of God because
she had established a prima facie case of negligence. Specifi-
cally, plaintiff asserts that the record shows a genuine issue of
material fact--namely, whether her injuries were proximately
caused by Romann's negligence or as defendants claim, an act of
God--which precludes summary judgment. In support of her conten-
tion, plaintiff relies on the Second District decision in Burns
v. Grezeka, 155 Ill. App. 3d 294, 508 N.E.2d 449 (1987).

Relying on the Second District's decision in Grote v.
Estate of Franklin, 214 Ill. App. 3d 261, 573 N.E.2d 360 (1991),
defendants respond that Drake's deposition testimony was "suffi-
cient to support summary judgment." We agree with plaintiff.

#### a. The Elements of an Affirmative Defense Based on an Act of God

"A loss or injury is due to the act of God, when it is
occasioned exclusively by natural causes such as could not be
prevented by human care, skill[,] and foresight." Wald v.
Pittsburg, Cincinnati, Chicago & St. Louis R.R. Co., 162 Ill.
545, 551, 44 N.E. 888, 889 (1896); see McClean v. Chicago Great
Western Ry. Co., 3 Ill. App. 2d 235, 246-47, 121 N.E.2d 337, 342
(1954) (injuries are caused by acts of God when such injuries are

- 14 -

beyond the power of human agency to foresee or prevent).  A sudden illness or death that renders a driver incapable of controlling his car, provided that the event is unforeseeable and beyond the power of human intervention to prevent, is an act of God.  Hoggatt v. Melin, 29 Ill. App. 2d 23, 31, 172 N.E.2d 389, 392 (1961).  However, liability is only precluded if the alleged act of God constitutes the sole and proximate cause of the injuries.  See Villegas v. Kercher, 11 Ill. App. 2d 282, 292, 137 N.E.2d 92, 97 (1956) (loss or injury is act of God if it is caused exclusively by natural causes).

b. The Second District's Decision in Burns

In Burns, 155 Ill. App. 3d at 296, 508 N.E.2d at 450, the plaintiff was a passenger in a vehicle that was stopped at a red light when it was struck in the rear by a car driven by the defendant's decedent.  The driver of the car that the decedent hit stated in his deposition that he first observed the decedent about 15 seconds after the collision and noted that his eyes were open but rolled back, and his arms were up; shortly thereafter, the decedent was unconscious and drooling, with his eyes closed and his arms down.  Burns, 155 Ill. App. 3d at 296, 508 N.E.2d at 450.  When the plaintiff saw the decedent, he was gasping for air, was unconscious, and his skin was a grayish-blue color.  Burns, 155 Ill. App. 3d at 296, 508 N.E.2d at 450.

According to the doctor who examined the decedent shortly thereafter but prior to his death, the decedent told the doctor that he had suddenly become weak and passed out while

- 15 -

driving his car. Burns, 155 Ill. App. 3d at 296-97, 508 N.E.2d at 450. The doctor (1) explained that the decedent was suffering from an abdominal aneurysm, which had been present for the past two or three years and had spontaneously ruptured; (2) stated that the rupture had caused the decedent's blood pressure to drop, which rendered him unconscious about 45 to 60 seconds later; (3) opined that it was "most probable that the aneurysm had preceded and caused the accident"; and (4) stated that the decedent "would not have experienced any forewarning of the rupture." Burns, 155 Ill. App. 3d at 296-97, 508 N.E.2d at 450.

The defendant filed a motion for summary judgment (Burns, 155 Ill. App. 3d at 297, 508 N.E.2d at 451), in which she asserted an affirmative defense based on an act of God (Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452). Specifically, the defendant claimed that the collision at issue was not due to the decedent's negligence but, instead, was caused by the decedent's abdominal aneurysm. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452.

In responding to the defendant's motion for summary judgment, the plaintiff filed additional excerpts from the doctor's deposition and a police report. Both indicated that the decedent had fainted while at the red light. Burns, 155 Ill. App. 3d at 297, 508 N.E.2d at 451. The additional excerpts also showed that the doctor opined, to a reasonable degree of medical certainty, that it was possible the accident had preceded and caused the decedent's rupture. Burns, 155 Ill. App. 3d at 297,

508 N.E.2d at 451.

The trial court granted the defendant's motion for summary judgment, finding no genuine issue of material fact, and the Second District reversed. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452. The Second District first concluded that the plaintiff had (1) established a prima facie case of negligence against the decedent and (2) presented sufficient facts to establish a cognizable cause of action (Burns, 155 Ill. App. 3d at 298, 508 N.E.2d at 452).

The Second District then considered whether defendant's affirmative defense based on an act of God established as a matter of law that the decedent was not responsible for the collision. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452. The court concluded that the evidence presented did not demonstrate as a matter of law that the aneurysm rupture caused the accident. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452. In particular, the Second District determined that the doctor's contradictory testimony did not establish when the rupture occurred. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452. The appellate court also concluded that the decedent could have been considered negligent for driving in an impaired state of health or for failing to pull his vehicle over to the side of the road in the 45 to 60 seconds before the rupture rendered him unconscious. Burns, 155 Ill. App. 3d at 299, 508 N.E.2d at 452.

c. The Second District's Decision in Grote

In Grote, 214 Ill. App. 3d at 262, 573 N.E.2d at 361,

- 17 -

the plaintiff filed a complaint against the defendant, decedent's estate, alleging that the decedent had negligently operated her car, causing it to cross the centerline of the road and hit the plaintiff's car. The uncontradicted expert deposition testimony of a pathologist and cardiologist showed that the decedent suffered intracranial bleeding, which caused her to promptly, and without warning, lose consciousness. Grote, 214 Ill. App. 3d at 267-68, 573 N.E.2d at 364. In addition, witnesses to the collision provided depositions consistent with the medical expert's opinions. Grote, 214 Ill. App. 3d at 273, 573 N.E.2d at 368.

The defendant filed an affirmative defense alleging an act of God was the sole and proximate cause of the accident. Grote, 214 Ill. App. 3d at 262, 573 N.E.2d at 361. The defendant then moved for summary judgment on that affirmative defense, which the trial court later granted. Grote, 214 Ill. App. 3d at 262-63, 573 N.E.2d at 361.

On appeal, the plaintiff argued, in pertinent part, that "an affirmative defense based upon an '[a]ct of God' cannot be the basis for a summary judgment." Grote, 214 Ill. App. 3d at 271, 573 N.E.2d at 366. The Second District in Grote disagreed and distinguished the cases the plaintiff relied upon for that proposition. Grote, 214 Ill. App. 3d at 271, 573 N.E.2d at 366-67. The court also concluded that summary judgment is not precluded when the movant raises an affirmative defense based upon an act of God. Grote, 214 Ill. App. 3d at 273, 573 N.E.2d at 368.

- 18 -

One of the cases that the Second District in <u>Grote</u> distinguished was its earlier decision in <u>Burns</u>. <u>Grote</u>, 214 Ill. App. 3d at 273, 573 N.E.2d at 368. To that end, the court stated the following:

> "As with the other cases cited by [the] plaintiff, we do not find the court's opinion in <u>Burns</u> as precluding summary judgment when an '[a]ct of God' defense is raised. Further, we find the facts in <u>Burns</u> to be distinguishable from the case at bar. While the opinion of the doctor in <u>Burns</u> was contradictory, the experts' opinions in the present case were consistent." <u>Grote</u>, 214 Ill. App. 3d at 273, 573 N.E.2d at 368.

In affirming the trial court's grant of summary judgment in the defendant's favor, the Second District concluded that the uncontradicted evidence showed that the accident was caused by defendant's intracranial hemorrhage that occurred without warning. <u>Grote</u>, 214 Ill. App. 3d at 274, 573 N.E.2d at 368.

### d. Plaintiff's Assertion That a Genuine Issue of Material Fact Remained Unresolved

As we have previously stated, plaintiff asserts that summary judgment is not appropriate to preclude liability based on an act of God because she had established a <u>prima facie</u> case of negligence. Specifically, plaintiff posits, in pertinent part, that as in <u>Burns</u>, Drake's testimony--on which both parties rely--suggests that Romann's loss of consciousness was neither

- 19 -

unforeseeable nor beyond his power to prevent. Thus, plaintiff claims that the record shows a genuine issue of material fact--namely, whether the collision was caused by Romann's negligence or, as defendants claim, by Romann's Stokes Adams attack.

Defendants respond that because Drake's uncontradicted testimony established that Romann's Stokes Adams attack was immediate and unforeseeable, this case is similar to Grote and, thus, the trial court did not err by granting summary judgment. However, because the record here shows that Drake's deposition testimony was not unequivocal, defendants' reliance on Grote is misplaced.

In this case, Drake testified, in part, to the following: (1) Romann had a small heart attack about 7 to 10 days before his death; (2) Romann would not have detected that he had a heart attack; (3) Romann would have experienced pain from his heart attack throughout the 7- to 10-day period that followed; (4) the pain would have most likely occurred in his jaw, shoulder, or chest; (5) Romann complained of neck pain after the collision that "very likely" resulted from his heart attack; (6) it was "very likely" that Romann experienced pain on more than one occasion; (7) the severity of the pain Romann experienced would have varied; (8) Romann may have "chalked up" the pain to indigestion or old age; (9) no evidence was presented that Romann had pain during the period; (10) Romann should have sought medical care for his pain; (11) medical intervention could have prevented further heart damage; (12) just prior to the collision,

Romann suffered a Stokes Adams attack that caused him to lose consciousness; (13) Romann would not have expected the Stokes Adams attack; and (14) Romann's Stokes Adams attack was caused by his heart attack.

Here, despite defendants' claim that Drake's testimony was unequivocal and established that Romann's Stokes Adams attack was immediate and unforeseeable, the following reasonable inferences, at a minimum, could have been adduced from his testimony: (1) Romann experienced noticeable pain during the 7 to 10 days following the heart attack, which he negligently ignored; (2) Romann experienced mild pain during the 7 to 10 days following the heart attack that he surmised was due to his age or some other harmless reason; or (3) Romann did not experience any pain and, thus, did not suspect his medical condition was compromised. These alternative possible inferences (1) presented a genuine issue of material fact that precluded summary judgment and (2) negated the affirmative defense based upon an act of God because Romann's Stokes Adams attack was not the sole and proximate cause of the collision.

Moreover, despite the Second District's decision in Grote, we have strong reservations that, as a matter of law, an affirmative defense based on an act of God could ever prevail in a summary-judgment context when the plaintiff's injury arose out of an automobile accident. To conclude that a natural event was the sole and proximate cause of such an injury requires irrefutable and unequivocal evidence, an extremely rare commodity.

Thus, although Grote presents a strong case, we note that even when the evidence presented is seemingly unequivocal, different inferences may still reasonably flow. See Williams v. Manchester, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008) ("A triable issue precluding summary judgment exists where the material facts are disputed or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts").

### 3. Plaintiff's Contention That Romann's Statements Created a Genuine Issue of Material Fact

Plaintiff also contends that Romann's statements that he "fell asleep" prior to the collision created a genuine issue of material fact. We agree.

We note defendants did not address this contention in their brief. Instead, throughout these proceedings, defendants referred to this matter only once, which was at the December 2008 hearing on their summary-judgment motion, when the following exchange took place after plaintiff finished her argument in opposition to summary judgment:

"THE COURT: *** [Defense counsel, the court will] let you reply. [The court is] interested *** in the suggestion that *** Romann told a coworker, [']well, maybe I fell asleep, maybe I blacked out.['] Is that not material fact[s] in question?

[DEFENSE COUNSEL:] One, no it's a conclusion as to some medical condition that at

- 22 -

this point in time, *** Romann didn't know that he had.  So how do you--

THE COURT:  You can fall asleep and also pass out for unrelated reasons, can't you?

[DEFENSE COUNSEL:]  Well[,] is [']fall[ing] asleep['] colloquial for [']blacking out[']?  I mean--

THE COURT:  Well, he drew a distinction apparently, in his discussion with his coworker.

[DEFENSE COUNSEL:]  I don't know that. ***  I don't know if that's a conclusion and that's speculation.  And the question--

THE COURT:  Is that not for a trier of fact to determine whether he fell asleep or blacked out?

[DEFENSE COUNSEL:]  It will never be admissible.  Dead Man's Act will keep that out.

THE COURT:  Okay.

[DEFENSE COUNSEL:]  So the fact of the matter is *** that will never be evidence. We resort back to the observations of third parties for what was, by [Romann], the abrupt maneuver across many lanes of travel, by the medical testimony that basically has opened

up the can and looked in and said [Romann] had the medical condition that would cause the immediate black out. And what was reported was consistent with what the pathology would show. So that's the admissible evidence that fails to present a triable issue in favor of a negligence claim."

The trial court was correct to be concerned that whether Romann fell asleep or blacked out was an issue for the trier of fact to determine. The record is not clear to what extent, if any, the court accepted defense counsel's musings that Romann's statements to his coworker would not be admissible under the Dead-Man's Act (Act) (735 ILCS 5/8-201 (West 2008)), but given the important nature of this testimony, it was not handled appropriately. Indeed, the evidence in question was potentially dispositive.

At a hearing on a motion for summary judgment, either party may wish to limit or remove specific evidence from the trial court's consideration. That is, the moving party (here, defendants) may wish to preclude the trial court from considering evidence that the opposing party (here, plaintiff) may offer in opposition to the motion for summary judgment. In this case, defendants did not want the court to consider the statements Romann made to Eldridge that he "went to sleep" and had a car accident, and later that he "blacked out, fell asleep." (In an appropriate case, of course, the nonmoving party may similarly

- 24 -

wish to preclude the court from considering some evidence that the moving party was relying upon.)

However, asking the trial court not to consider certain evidence when it resolves a motion for summary judgment must be based upon more than mere musings (as occurred here) at the time the motion is heard. Instead, if defendants here intended to preclude the court's consideration of Romann's statements to Eldridge, they should have filed an appropriate motion to that effect in advance of the hearing so that both the court and plaintiff would be put on notice of defendants' position. Then, the better practice would be for the matter to be litigated in a separate, formal hearing prior to the summary-judgment hearing itself. Alternatively, if the court believes the evidentiary matter at issue is not complicated, then the court in its discretion may address that matter immediately prior to the summary-judgment hearing or during that hearing itself, provided, of course, that the opposing party has received sufficient notice of the motion. Further, the moving party should seek--and the trial court should provide--a definitive ruling on the evidentiary matter at issue. Following this procedure would not only make for a better record at the trial level, it would also provide courts of review with a clear picture of (1) the parties' positions at trial and (2) the trial court's ruling.

If the evidentiary matter at issue is more involved, then the party seeking to bar the trial court's consideration of the evidence should make a motion to strike or bar the evidence

and set the matter for a hearing prior to the hearing on the motion for summary judgment. This would be the preferred course, for instance, if a party wished to challenge expert testimony proffered by the other side in a summary-judgment context. See Kleiss, 349 Ill. App. 3d at 351, 811 N.E.2d at 341-42.

Here, defendants' bald, conclusory assertions regarding the admissibility of Romann's statements were insufficient. Because defendants failed to raise their contention prior to the summary-judgment hearing that the Act precluded the trial court's consideration of Romann's statements, plaintiff never received advance notice of this contention and appeared unprepared to address it at the hearing. The court likewise seemed unprepared to assess defendants' Act contention. Thus, no one should be surprised under these circumstances that the record does not contain any definitive ruling by the trial court regarding defendants' contention.

Turning to the merits of plaintiff's argument that Romann's statements created a genuine issue of material fact, we note that the trial court's docket entry granting summary judgment mentioned these statements in its summary of the evidence presented. Accordingly, these statements were part of the evidentiary material before the court when it granted defendants' motion for summary judgment. See McCullough v. Gallaher & Speck, 254 Ill. App. 3d 941, 947, 627 N.E.2d 202, 207 (1993) ("The scope of appellate review of a summary[-]judgment motion is limited to the record as it existed at the time the trial court ruled"). We

agree with plaintiff that Romann's statements that he may have fallen asleep prior to the collision raise a genuine issue of material fact that precludes summary judgment.

## III. EPILOGUE

In this opinion, we have discussed plaintiff's two arguments as to why the trial court erred by granting defendants' motion for summary judgment, and we stated our agreement with each.  We note that our analysis of these arguments provides two separate and independent bases for reversal.

## IV. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

McCULLOUGH, J., concurs.

POPE, J., specially concurs.

JUSTICE POPE, specially concurring:

I agree with the majority that summary judgment was precluded in this case because a question of fact existed about the cause of the accident. I write separately to clarify a few matters. First, I disagree with the majority's characterization of the trial court's handling of the matter as "inappropriate." Slip op. at 24. As the majority points out, the lawyers did not frame the issue concerning the Act in a way that invited the court to rule on the matter. Second, the majority finds evidence of Romann's statements to Eldridge about falling asleep were "potentially" dispositive. Slip op. at 24. Apparently, such evidence was "actually" dispositive as to the motion for summary judgment, because we have ruled this evidence created a question of fact which precluded a grant of summary judgment. Third, while defendants seemed quite confident in the trial court the Act would bar admission of Romann's statement to Eldridge, I would note the Act is a bar to testimony of an adverse party or person directly interested in the action. 735 ILCS 5/8-201 (West 2008). Since Eldridge is not an adverse party, nor does he appear to have an interest in the case, his testimony, in my opinion, would not come within the purview of the Act. Since it does not come within the purview of the Act, it appears to be admissible and thus available to create the question of fact we have relied on in reversing the grant of summary judgment.