Docket No. 92887–Agenda 29–September 2002.

KELLY JEAN BRUGGER 
et al
., Appellees, v. JOSEPH

 ACADEMY, INC., Appellant.

Opinion filed November 21, 2002.

JUSTICE KILBRIDE delivered the opinion of the court:

The defendant, Joseph Academy, Inc. (the academy), is a private, not-for-profit corporation serving special education students pursuant to contracts with various local public school districts. In this appeal, the academy requests that we reconsider the criteria this court recently adopted in 
Carroll v. Paddock
, 199 Ill. 2d 16 (2002), for identifying local public entities under section 1–206 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/1–206 (West 2000)). Alternatively, the academy argues that it qualifies for immunity under the 
Carroll
 criteria.

The trial court granted summary judgment in favor of the academy, finding that it met the definition of a local public entity under the Act. The appellate court reversed and remanded the cause, holding that section 1–206 of the Act was not applicable to the academy. 326 Ill. App. 3d 328, 334-35. We adhere to our decision in 
Carroll
 and affirm the appellate court’s judgment, remanding the cause for further proceedings.

I. BACKGROUND

In January 1997, plaintiff Kelly Brugger, then a minor, seriously injured her knee while playing a game of “bombardment” during a physical education class at the academy. Brugger’s doctor had previously sent a note to the academy barring her from participation in any activity involving side-to-side movement due to a knee injury, but Brugger alleges that she was ordered to play bombardment or risk receiving a failing grade for the class and being unable to graduate.

The academy is a not-for-profit corporation operating as a “private school for educating emotionally handicapped youth.” Brugger’s former public school district, Leyden Community High School District 212 (the school district), contracted with the academy for Brugger’s education because it was unable to provide an appropriate education for her in its own facilities.

Brugger filed a personal injury complaint against both the academy and the school district, alleging that her injury was caused by willful and wanton misconduct in that she was required to participate in the game of bombardment contrary to her physician’s orders. The circuit court of Cook County granted the school district’s motion to dismiss it as a party; that ruling is not challenged on appeal. The academy filed a motion for summary judgment, and the trial court granted the motion, finding that the facility had immunity as a “[l]ocal public entity” under section 1–206 of the Act (745 ILCS 10/1–206 (West 2000)). The appellate court reversed, finding that this court’s decision in 
Cooney v. Society of Mt. Carmel
, 75 Ill. 2d 430 (1979), precluded granting immunity to the academy as a “local public entity” under section 1–206. 326 Ill. App. 3d at 333.

This court granted the academy’s petition for leave to appeal on February 6, 2002 (
Brugger v. Joseph Academy, Inc.
, 198 Ill. 2d 588 (2002)), pursuant to Supreme Court Rule 315(a) (177 Ill. 2d R. 315(a)). On February 7, 2002, we filed our decision in 
Carroll
. The lower courts in this case did not have the benefit of the 
Carroll
 decision, and the academy now raises important questions concerning the practical application of the 
Carroll
 test in the context of a new set of facts.

II. ANALYSIS

The academy raises two issues before this court. First, it argues 
Carroll v. Paddock
, 199 Ill. 2d 16 (2002), was wrongly decided. It contends that the test recently adopted in 
Carroll
 to identify local public entities qualifying for immunity under the Act is overly restrictive and does not comport with either the plain language of the Act (745 ILCS 10/1–206 (West 2000)) or the intent of the legislature. In the alternative, the academy contends that, even if the 
Carroll
 test is applied in this case, it qualifies as a local public entity under section 1–206 of the Act (745 ILCS 10/1–206 (West 2000)). Thus, the academy maintains that the trial court properly granted summary judgment in its favor. We begin our examination of these issues with the academy’s challenge to our recent decision in 
Carroll
.

A

The Act grants covered entities immunity from tort liability for injuries “arising from the operation of government.” 745 ILCS 10/1–101.1 (West 2000); 
Carroll
, 199 Ill. 2d at 23. The entities protected by the Act include the bodies specified in section 1–206 “as well as any not-for-profit corporation organized for the purpose of conducting public business.” 745 ILCS 10/1–206 (West 2000).

In 
Carroll
, this court considered whether a not-for-profit hospital was a local public entity within the meaning of section 1–206 and, thus, entitled to immunity. 
Carroll
, 199 Ill. 2d at 22. We concluded that the undefined term “public business” requires the pursuit of “ ‘ “an activity that benefits the entire community without limitation. In addition, the phrase ‘public business’ is also today commonly understood to mean the business of the government.” ’ ” 
Carroll
, 199 Ill. 2d at 25-26, quoting 
Carroll v. Paddock
, 317 Ill. App. 3d 985, 992 (2000), quoting 
O’Melia v. Lake Forest Symphony Ass’n
, 303 Ill. App. 3d 825, 828 (1999). Furthermore, since “[p]ublic business is the business of government,” a not-for-profit organization seeking immunity under section 1–206 must establish that it is “tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government.” 
Carroll
, 199 Ill. 2d at 27. The academy’s challenge to our construction of the Act in 
Carroll
 presents a question of law. Accordingly, we will review this issue 
de novo
. 
In re C.N.
, 196 Ill. 2d 181, 208 (2001).

1

The academy first argues that 
Carroll
 adopted an erroneous definition of “public business” for purposes of the Act. It contends that, based on our misconstruction of this term, 
Carroll
 established an overly restrictive test for determining whether an entity qualifies for tort immunity under the Act. Indeed, the academy claims that our test effectively renders the entire phrase “as well as any not-for-profit corporation organized for the purpose of conducting public business” mere surplusage because the requirement of government ownership or control eliminates all nongovernmental agencies.

The academy’s contention that a not-for-profit corporation can never qualify for immunity under our test in 
Carroll
 is belied by a case cited in its own brief, 
Barnes v. Chicago Housing Authority
, 326 Ill. App. 3d 710 (2001). In that case, the plaintiffs filed a tort complaint seeking, in part, recovery for serious personal injuries allegedly caused by the failure of a resident management corporation to provide adequate security at a public housing development in Chicago. 
Barnes
, 326 Ill. App. 3d at 716.

Resident management corporations are not-for-profit organizations recognized under a program of the United States Department of Housing and Urban Development, designed to promote tenant management of public housing developments. See 24 C.F.R. §964 
et seq.
 (2001). Pursuant to the United States Housing Act of 1937, the resident management program requirements provide that each resident management corporation “shall enter into a contract with the public housing agency establishing the respective management rights and responsibilities of the corporation and the public housing agency.” 42 U.S.C.A. §1437r(b)(4) (West Supp. 2002). That same statute mandates that the contract

“be consistent with the requirements of this chapter applicable to public housing projects and may include specific terms governing management personnel and compensation, access to public housing project records, submission of and adherence to budgets, rent collection procedures, tenant income verification, tenant eligibility determinations, tenant eviction, the acquisition of supplies and materials, rent determination, community service requirements,,[
sic
] and such other matters as may be appropriate.” 42 U.S.C.A. §1437r(b)(4) (West Supp. 2002).

Other federal regulations further govern the interaction between the public housing authority and the resident management corporation. 24 C.F.R. §964.120 
et seq
. (2001). These regulations include provisions restricting eligibility for membership in the resident council (24 C.F.R. §964.125 (2001)) and mandating election procedures (24 C.F.R. §964.130 (2001)). Resident councils play an important role because they may establish resident management corporations. 24 C.F.R. §964.120 (2001). Such close interaction and comprehensive governmental control of a not-for-profit corporation exemplify the characteristics of the type of organization that may be able to qualify for immunity as a “local public entity” under section 1–206 of the Act (745 ILCS 10/1–206 (West 2000)). Without specifically ruling on the immunity of resident management corporations, we reject the academy’s contention that 
Carroll
 renders the portion of the Act granting immunity to “any not-for-profit corporation organized for the purpose of conducting public business” mere surplusage.

2

The academy next challenges 
Carroll
’s definition of “public business” by arguing that it was improperly drawn from definitions in Black’s Law Dictionary, rather than from the common law usage of that term. See 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 21-22 (1996). The academy asserts that at common law “public business” described governmental activities that furthered the public welfare or affected the public interest. Since the public has an interest in the traditional governmental function of education, the academy argues that, pursuant to its contracts with various public school systems, it conducts “public business” within the meaning of the Act.

Initially, we note that the academy’s purported “common law” definition of “public business” appears to rely almost entirely on the definition of “public purpose” in Black’s Law Dictionary (Black’s Law Dictionary 1231 (6th ed. 1990)), as well as on an alternative definition of “public business” in that same volume (Black’s Law Dictionary 199 (6th ed. 1990)). The academy points to no case law interpreting the term “public business” as it is used in the Act, and, as previously stated in 
Carroll
, 199 Ill. 2d at 23, we can find no such authority. Thus, we reject the academy’s common law argument because we are unable to find any substantial basis for construing the term “public business,” as it is used in the Act, as a common law term of art.

3

The academy also asserts that 
Carroll
’s definition of “public business” failed to recognize the common law concept of a “quasi-public corporation” or a “public service corporation,” defined as a corporation “whose operations serve the needs of the general public or conduce to the comfort and convenience of an entire community” (Black’s Law Dictionary 342 (6th ed. 1990)). Such businesses are “ ‘affected with a public interest’ ” and thus are “subject to legislative regulation and control to a greater extent than corporations not of this character.” Black’s Law Dictionary 342 (6th ed. 1990). The academy cites waterworks (
City of Danville v. Danville Water Co.
, 178 Ill. 299, 301 (1899)) and railroads (
People ex rel. Jackson v. Suburban R.R. Co
., 178 Ill. 594, 605-06 (1899)) as examples of public service corporations. As a facility contracting with public school districts to educate students who cannot be properly served within the districts, the academy maintains that it is also “affected with a public interest” and benefits the general public, qualifying it for immunity under the Act.

The cited cases do not support the academy’s attempt to come within the protections of the Act. Most importantly, none of the cases cited by the academy construe the term “public business” as it is used in the Act. In 
City of Danville
, 178 Ill. at 304-14, this court considered the validity of a contract between a municipality and a private water company and the fixing of rates in that contract. Similarly, in 
Suburban R.R. Co
., 178 Ill. at 604-07, the court considered the issuance of a writ of 
mandamus
 to enforce compliance with conditions required by a local ordinance authorizing the railroad’s operation in the city. Neither case discusses tort liability or immunity.

The academy’s argument is further undermined by the close connection our case law has drawn between the use of the label “quasi-public corporation” and the corporation’s critical operational need for the use of public streets, alleys, and public places to provide service to all members of the community. See 
City of Danville
, 178 Ill. at 309-10;
 Suburban R.R. Co
., 178 Ill. at 605-06. In the instant case, the academy does not need any public property or facilities to conduct its business. Moreover, the academy does not attempt to provide services to the entire community or even to all students who apply for admission. The academy is free to accept or reject any potential student and need not admit every student referred for placement by a public school. Thus, the cases cited by the academy are both factually and legally distinguishable.

4

The academy further maintains that the definition of “public business” in 
Carroll
 is impossible to apply in practice since virtually no entities, even governmental ones, benefit the 
entire
 community. It notes that even public school systems do not directly benefit anyone without school-age children. The academy adds that, conversely, many governmental bodies that indisputably qualify as local public entities, such as public school districts, also limit the individuals that they serve. This observation, the academy maintains, again points out the impracticality of our definition in 
Carroll
.

The academy’s reliance on the restrictions governmental bodies put on the usage and receipt of benefits is misplaced. First, it is irrelevant whether governmental bodies such as public school districts satisfy the criteria in 
Carroll
 because section 1–206 specifically identifies numerous entities, including school districts, qualifying for immunity as “local public entities.” 745 ILCS 10/1–206 (West 2000). 
Carroll
 did not address that issue. The criteria in 
Carroll
 were simply intended to define an ancillary class of qualified local public entities, namely, “ ‘any not-for-profit corporation organized for the purpose of conducting public business.’ ” 
Carroll
, 199 Ill. 2d at 23-24, quoting 745 ILCS 10/1–206 (West 1998).

Moreover, the academy’s argument confuses governmental limitations on use with limitations on access to services. While it is true that public education is 
accessible
 without cost to all children, the 
use
 of public school facilities depends on the students’ abiding by the applicable school rules. Similarly, public transportation and library systems are available to all members of the relevant community, but the use of those services is conditioned on adhering to the stated rules. Services may be denied, for instance, to members of the public who are disorderly or who present a threat to the safety of other users or to government property. These limits on 
use
 are not the same as those the academy places on potential students’ 
access
 to its facilities. As the academy admits, it retains sole discretion both to decide whether to interview a particular applicant and, ultimately, to accept or reject any student on any grounds.

5

In its final challenge to 
Carroll
, the academy asserts that this court erred by suggesting that the applicability of the Open Meetings Act (5 ILCS 120/1.01 
et seq.
 (West 2000)) and the Freedom of Information Act (5 ILCS 140/1 
et seq
. (West 2000)) could be used to determine whether a not-for-profit corporation qualifies for immunity under section 1–206 because those statutes do not concern “local public entities.” See 
Carroll
, 199 Ill. 2d at 26. We believe that the academy has misconstrued our statement in 
Carroll
.

We prefaced that statement by suggesting that if “the governing body of the not-for-profit corporation is subject to regulations such as” the aforementioned statutes, it might provide “[a]n indicia of the requisite control” by a government body. 
Carroll
, 199 Ill. 2d at 26. We then offered alternative means of evincing that same control, such as local ordinances that regulate the way that the not-for-profit corporation conducts its business. 
Carroll
, 199 Ill. 2d at 27. These examples merely demonstrate factors that could provide evidence of the necessary governmental control. They are not intended to be used alone as determinative tests, nor do they provide the only possible bases for finding the requisite degree of government control. We find no merit in the academy’s final challenge to our decision in 
Carroll
.

6

In summary, in the absence of prior interpretive guidance, in 
Carroll
 this court construed the term “public business” to effectuate the intent of the legislature. 
Carroll
, 199 Ill. 2d at 22. In so doing, we applied the plain and ordinary meaning of the statutory language. 
Carroll
, 199 Ill. 2d at 25-26. We also explicitly recognized our obligation to construe the Act as a whole rather than to examine each word and phrase in isolation. 
Carroll
, 199 Ill. 2d at 22-23. We then applied those fundamental rules of statutory construction to determine the meaning of the phrase “public business” as used in section 1–206 of the Act. 
Carroll
, 199 Ill. 2d at 22-26.

Today, we adhere to both our method of construction in 
Carroll
 and our interpretation of section 1–206 of the Act. Thus, any not-for-profit corporation seeking tort immunity under that section must demonstrate that it conducts “public business” by establishing that it pursues “ ‘ “an activity that benefits the entire community without limitation” ’ ” (
Carroll
, 199 Ill. 2d at 25-26, quoting 
Carroll v. Paddock
, 317 Ill. App. 3d 985, 992 (2000), quoting 
O’Melia v. Lake Forest Symphony Ass’n
, 303 Ill. App. 3d 825, 828 (1999)) and that it is “tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government” (
Carroll
, 199 Ill. 2d at 27).

B

Nonetheless, the academy contends that, even if this court adheres to our test in 
Carroll
, the trial court properly granted it summary judgment because it is entitled to immunity under the Act as a local public entity. According to the academy, it is both “tightly enmeshed” with the local public school districts making referrals and open to the public-at-large through the placement mechanism contained in the School Code (105 ILCS 5/14–7.02 (West 2000)). See 
Carroll
, 199 Ill. 2d at 26-27.

When reviewing a grant of summary judgment, this court must determine whether, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2000); 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 384-85 (1996). As with the construction of a statute, an order of summary judgment presents a question of law to be reviewed 
de novo
. 
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 349 (1998).

1

The academy first argues that its close contractual ties to the public school districts qualify it for immunity under the 
Carroll
 criterion that it be “tightly enmeshed with government *** through *** operational control by a unit of local government.” 
Carroll
, 199 Ill. 2d at 27. Article X of the Illinois Constitution (Ill. Const. 1970, art. X, §1) mandates free public education, and our appellate court has found that this provision “incorporates programs of instruction other than the standard course of study established in the public school system” (
Elliot v. Board of Education of the City of Chicago
, 64 Ill. App. 3d 229, 235-36 (1978)), such as private special education. The academy also notes that the School Code requires public schools to place students in special education facilities at no cost to their parents. See 105 ILCS 5/14–4.01, 14–7.02 (West 2000). Thus, the academy claims that it meets the Act’s definition of a “not-for-profit corporation organized for the purpose of conducting public business” (745 ILCS 10/1–206 (West 2000)) because it is a substitute provider of the constitutionally mandated free education other students receive in their local public schools.

The academy further argues that its special education facilities are, in fact, controlled by the government because they are extensively regulated under contracts with local public school districts, as well as by the Illinois Administrative Code, the Illinois School Student Records Act (105 ILCS 10/1 
et seq.
 (West 2000)), and the Governor’s Purchased Care Review Board’s mandatory review of allowable costs and payments for special education. Moreover, the academy must allow local public school districts to exert control over its operations through visits, evaluations, and inspections, and it is contractually obligated to provide the districts with monthly attendance reports, tests and evaluation reports, and progress reports. Even the academy’s curriculum is dictated by each student’s local school district. Finally, the school districts are legally obligated to provide transportation to students enrolled in the academy (105 ILCS 5/14–7.02 (West 2000)), and those same districts provide over 95% of the facility’s operating funds. Based on these facts, the academy contends that it is tightly enmeshed with government.

We disagree. First, the academy is only obliged to satisfy the regulatory schemes and contractual requirements it cites because it chooses to contract with public schools for students. Second, the academy’s reliance on the quote from 
Carroll
, referring to “operational control by a unit of local government,” is misplaced. 
Carroll
, 199 Ill. 2d at 27. The key words in that quote are “
operational
 control.” In its brief, the academy candidly admits that “in terms of its day-to-day school operations, [it] maintains its autonomy.” Pursuant to the contracts in effect between the academy and the school district, the academy is permitted to run its day-to-day operations as it chooses, and its board is not subject to any outside governmental control. Moreover, the academy’s board is comprised solely of members acting in their individual capacities. No governmental entity or public official acting in an official capacity is represented on the board. Under these circumstances, the government does not possess broad operational control over the academy. Indeed, the academy’s board could choose to eliminate its government contracts entirely, making many of the governmental interventions it cites no longer applicable to it. Truly 
public
 school facilities do not have this option.

Finally, the academy’s contention that its operational funds are provided by the state is misleading. The monies received by the academy are simply revenue obtained from tuition payments made by the contracting public schools. They are not direct payments from the state budget. Public entities, including schools, routinely employ outside vendors and service providers. This does not mean, for example, that a general construction company that dedicates its entire workforce for a year to a school’s major renovation project becomes a state-funded entity. Rather, it retains its character as a private business that has temporarily chosen to reject other employment opportunities. Furthermore, the academy does not dispute that the amount of revenue it receives is entirely dependent upon the number of students it chooses to accept, rather than any state baseline annual budgetary allowance.

For these reasons, we believe that the academy has failed to establish that it is sufficiently enmeshed with government to be entitled to the protections of the Act as a matter of law.

2

For similar reasons, the academy’s argument that the placement mechanism in the School Code (105 ILCS 5/14–7.02 (West 2000)) enables it to satisfy the requirement in 
Carroll
 that it be “ ‘ “[o]pen to *** the [public] at large” ’ ” (
Carroll
, 199 Ill. 2d at 26, quoting 
O’Melia
, 303 Ill. App. 3d at 828, quoting Black’s Law Dictionary 1227 (6th ed. 1990)) also fails. The academy attempts to differentiate itself from other private schools because it enrolls students only from and through referrals by public school districts (23 Ill. Adm. Code §401.60(h) (2002)), not from parents privately seeking admission for their children. Thus, the academy contends that it serves the public at large by stepping directly into the shoes of local public schools that are unable to provide appropriate services to disabled children. The academy fails to note, however, that since it is privately operated and controlled, it can freely reject any applicant for any reason. Moreover, the academy may terminate a student’s enrollment simply by providing 30 days’ notice under its contract with the public school district. In contrast, genuinely “public” schools must serve the eligible public at large and cannot choose their students. For this reason alone, the academy is not open to the public at large. Thus, the academy may not claim immunity under the Act because, as a matter of law, it has failed to meet the requirements in 
Carroll
. The appellate court properly reversed the grant of summary judgment in favor of the academy.

III. CONCLUSION

We adhere to our prior analysis in 
Carroll
 and reaffirm the requirements that a not-for-profit corporation seeking immunity as a local public entity under section 1–206 of the Act must establish that it provides benefits to the entire community and “is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government.” 
Carroll
, 199 Ill. 2d at 27. We further hold that, applying this test in the instant case, the academy does not qualify for immunity under section 1–206 of the Act.

Accordingly, the judgment of the appellate court, which remanded the cause to the circuit court of Cook County for further proceedings, is affirmed.

Appellate court judgment affirmed.

CHIEF JUSTICE McMORROW took no part in the consideration or decision of this case.