Filed 12/23/10          NO. 4-10-0143

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DAWN SIMMONS,                                    )   Appeal from
          Plaintiff-Appellant,                   )   Circuit Court of
          v.                                     )   Livingston County
NANCY REICHARDT and GREG REICHARDT,              )   No. 05L14
          Defendants-Appellees.                  )
                                                 )   Honorable
                                                 )   Jennifer H. Bauknecht,
                                                 )   Judge Presiding.
_____

          JUSTICE STEIGMANN delivered the opinion of the court:

          In May 2005, plaintiff, Dawn Simmons, sued defendants,

Nancy and Greg Reichardt, for injuries she sustained in June 2003

while on a trampoline.  In October 2007, Nancy and Greg filed a

motion for summary judgment under section 2-1005 of the Code of

Civil Procedure (735 ILCS 5/2-1005 (West 2008)), arguing that (1)

they did not owe Dawn a duty to warn her that jumping on a

trampoline may cause injury, (2) Dawn did not present evidence

that the trampoline was defective, and (3) Greg did not own the

trampoline or the property on which the trampoline was located.

Following a March 2009 hearing, the trial court granted summary

judgment in favor of Nancy and Greg.

          Dawn appeals, arguing that the trial court erred by (1)

granting summary judgment in Greg's favor and (2) denying her

subsequent motion to reconsider.  We disagree and affirm.

                              I. BACKGROUND

          The following facts were gleaned from the parties'

pleadings, depositions, affidavits, admissions, and other sup-

porting documents filed with the trial court.

In 2003, Greg and his eight-year-old daughter, Haley, lived in a home owned by Greg's mother, Nancy. Nancy also rented a room to Matt Ryan, a mutual friend of Greg and Dawn. In June 2003, Dawn drove to Nancy's home to visit Greg, whom she had known for several years. Shortly after arriving, Dawn, Haley, and Matt began playing a game called "popcorn" on the trampoline located in Nancy's backyard. Dawn described that the game--which she had played several times on that trampoline--required a person to sit in the center of the trampoline's bouncing surface, while others bounced along the outer edges in an attempt to "pop" the sitting person into the air.

Dawn explained that because she had been experiencing lower back spasms, which she had been treated for since 2001, she did not want to jump on the trampoline. Instead, Dawn sat in the middle of the trampoline's circular surface while Matt and Haley attempted to propel her into the air. At some point, Dawn was lifted into the air, came back down onto the trampoline surface, and "bottomed out," which caused her to hit her buttock on the ground. As a result, Dawn experienced pain and immediately stopped playing on the trampoline. Thereafter, Dawn, Matt, and Haley began playing catch with a football.

After playing catch, Dawn returned to Nancy's home, where Greg and Nancy had been during Dawn's time outside with Matt and Haley. Dawn told Greg that (1) she had hit her buttock on the ground while on the trampoline and (2) her buttock and

tailbone were aching.  Dawn stated that Greg responded by laughing and stating, "[N]ow you know why I don't go on that thing." Later that evening, Dawn experienced an aching tailbone but "could still walk and move around."  Dawn spent the night at Nancy's home, and the following morning, experienced pain in her lower back and tailbone area that intensified as the day progressed.  Eventually, Dawn drove to a drugstore to fill a prescription that her doctor had prescribed for muscle spasms months earlier.

Two weeks later, Dawn sought medical attention for her lower back, and her doctor prescribed an oral steroid.  During a second doctor visit, the physician ordered a magnetic resonance imaging test.  Shortly thereafter, Dawn called Greg and asked him to file a claim with his insurance company because she did not have health insurance.  Greg initially responded that he would do so, but a few days later when Dawn called Greg about her request, he refused to take her call.  In September 2003, Dawn had surgery on a disk in her lower back that had been putting pressure on her spinal cord.  Dawn claimed that as a direct result of the trampoline incident, she was unemployed from August 2003 through January 2004.

After Dawn decided to sue Nancy and Greg, she made a written record of the events related to the trampoline incident, which spanned from June through September 2003.  In an entry dated "Week of Sunday[,] June 15, 2003[,]" Dawn wrote, in pertinent part, the following:

"During the conversation, I mentioned
how much pain my back was in from the trampo-
line bottoming-out.  Greg's response was,
'Hey, now you know why I don't go on that
thing anymore! (laughs)...We just moved it to
the other side of the yard, so some of the
springs were probably loose."

In May 2005, Dawn filed a two-count complaint, alleging
that Nancy and Greg, respectively, (1) knew the trampoline's
springs were loose and (2) failed to warn her (a) about the loose
springs and (b) that the weight of two adults on the trampoline
would be sufficient for the trampoline's bouncing surface to make
contact with the ground.

In October 2007, Nancy and Greg filed a motion for
summary judgment under section 2-1005 of the Code (735 ILCS 5/2-
1005 (West 2008)), arguing that (1) they did not owe Dawn a duty
to warn her that jumping on a trampoline may cause injury, (2)
Dawn did not present evidence that the trampoline was defective,
and (3) Greg did not own the trampoline or the property on which
the trampoline was located.  In support of the motion for summary
judgment, Greg attached an affidavit, in which he stated, in
pertinent part, the following:

"2.  That the property where [Dawn's]
alleged injuries occurred was owned solely by
[Nancy].

3.  That the trampoline upon which

[Dawn] allegedly sustained her injuries was purchased and owned solely by [Nancy]."

Following a March 2009 hearing on the motion for summary judgment, the trial court, in May 2009, entered a written order granting summary judgment in favor of Greg and Nancy.  With regard to the grant of summary judgment in Greg's favor, the court's order stated, in pertinent part, the following:

"[I]t is undisputed that Greg *** was not home at the time of the incident, did not own the trampoline[,] and had not given [Dawn] permission to use the trampoline. [Dawn's] theory against [Greg] is *** based upon the statement he made after the incident.  However, the statement itself is vague and does not show prior knowledge on the part of [Greg].  Assuming arguendo that [Greg] made this statement, he could not very well have warned [Dawn] about it since he was not home at the time of the incident.  Moreover, he was not the owner of either the home or the trampoline and therefore[,] would owe no duty to [Dawn] to warn her of any defects." (Emphases added.)

In June 2009, Dawn timely filed a motion to reconsider, requesting that the trial court reverse its grant of summary judgment in Greg's favor.  In support of her motion, Dawn ap-

- 5 -

pended only the affidavit of Kimberly Gordon, Greg's former spouse, who asserted that (1) she was with Greg when he purchased the trampoline in 2000, (2) the trampoline became Greg's property after their divorce, and (3) Nancy neither purchased nor financed the purchase of the trampoline.

In September 2009, Greg filed an answer to Dawn's motion to reconsider in which he (1) argued that the trial court should not consider Kimberly's affidavit because Dawn did not provide a reasonable explanation as to why the affidavit was not provided to the court at the March 2009 hearing on the motion for summary judgment and (2) acknowledged that he was at Nancy's home during the trampoline incident, but that he neither knew that Dawn was using the trampoline nor gave her permission to do so.

(The record shows that prior to the hearing on Dawn's motion to reconsider, Nancy died. Thus, Dawn's motion to reconsider was solely directed to the trial court's grant of summary judgment in Greg's favor.)

Following a January 2010 hearing on Dawn's motion to reconsider, the trial court entered the following docket entry:

"[The court] notes that Greg was home at [the] time of [the] incident (contrary to [statement] in order granting summary judgment ***), but [he was] not aware [that] anyone [was] outside using [the] trampoline. Affidavits [submitted with motion] to reconsider not properly before [the court]. Re-

- 6 -

gardless, [the court] finds [nothing] which would cause [the court] to reconsider its ruling. [Motion] to reconsider denied." (Emphasis in original.)

This appeal followed.

## II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

### A. Dawn's Claim That the Trial Court Erred by Granting Summary Judgment in Greg's Favor

#### 1. Summary Judgment and the Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Irwin Industrial Tool Co. v. Illinois Department of Revenue, 238 Ill. 2d 332, 339-40, ___ N.E.2d ___, ___ (2010), quoting 735 ILCS 5/2-1005(c) (West 2008). A triable issue of fact precluding summary judgment exists where the material facts are disputed or where the material facts are undisputed, but reasonable persons might draw different inferences from those undisputed facts. Williams v. Manchester, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008).

The party moving for summary judgment bears the initial burden of proof. Atanus v. American Airlines Inc., 403 Ill. App. 3d 549, 553, 932 N.E.2d 1044, 1048 (2010); Evans v. Brown, 399 Ill. App. 3d 238, 243, 925 N.E.2d 1265, 1271 (2010). "When reviewing a grant of summary judgment, this court must determine whether, when viewed in the light most favorable to the nonmoving

- 7 -

party, the pleadings, depositions, admissions, and affidavits on file reveal any genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Brugger v. Joseph Academy, Inc., 202 Ill. 2d 435, 446, 781 N.E.2d 269, 275 (2002). "We review de novo the trial court's grant of summary judgment." Brown, 399 Ill. App. 3d at 244, 925 N.E.2d at 1271.

## 2. Dawn's Contention That a Genuine Issue of Material Fact Precluded Summary Judgment

Dawn argues that the trial court erred by granting summary judgment in Greg's favor. Specifically, Dawn contends that contrary to the court's findings, a genuine issue of material fact existed as to whether Greg owned the trampoline. In support of her contention, Dawn relies on Greg's August 2007 deposition, in which Greg provided the following pertinent testimony:

"[DAWN'S ATTORNEY]: Do you know what size the trampoline was that was in your yard?

[GREG]: *** It might have been 15-foot [in] diameter maybe. ***

[DAWN'S ATTORNEY]: And you were the one who purchased the trampoline ***?

[GREG]: Yes.

[DAWN'S ATTORNEY]: And do you remember when that was?

[GREG]: That would be [sic] before

- 8 -

[Haley and I] moved to [Nancy's home], so I
would think it would probably be [20]02.

[DAWN'S ATTORNEY]:  And what did you
purchase it for, if anything?

[GREG]:  For Haley."

Upon appellate review of a trial court's summary-judgment determination, the appellant may (1) refer to the record only as it existed at the time the trial court ruled, (2) outline the arguments made at that time, and (3) explain why the trial court erred by granting summary judgment.  Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 292 Ill. App. 3d 131, 136, 685 N.E.2d 434, 439 (1997).

The problem with Dawn's contention is that prior to the March 2009 hearing on Greg's motion for summary judgment, she never submitted Greg's deposition to the trial court as it addressed that motion.  Thus, when the court entered a written order in May 2009 granting summary judgment in Greg's favor, the court was correct to observe--based upon the materials the parties had submitted--that it was "undisputed" that Greg was not the owner of either the home or the trampoline.  Indeed, although Dawn later filed a motion to reconsider that contained additional evidentiary material--namely, the affidavit of Kimberly Gordon--she never presented the court with Greg's deposition, as Dawn's counsel conceded at oral argument before this court.  Accordingly, because the content of Greg's deposition was not properly before the court at the March 2009 summary-judgment hearing, we

refuse to consider it on appeal.  See <u>Brown</u>, 399 Ill. App. 3d at 252, 925 N.E.2d at 1278 ("'The scope of appellate review of a summary[-]judgment motion is limited to the record as it existed at the time the trial court ruled'"), quoting <u>McCullough v. Gallaher & Speck</u>, 254 Ill. App. 3d 941, 947, 627 N.E.2d 202, 207 (1993).  To hold otherwise would mean reversing the trial court based upon evidence it never heard, an action this court is extraordinarily disinclined to ever take.

Having concluded that the August 2007 deposition was not properly before the trial court, we turn to the merits of Dawn's argument, considering only the evidence that was properly before the court.

Here, the competent evidence--which we note was undisputed--at the March 2009 summary-judgment hearing shows that Nancy owned (1) the trampoline in question and (2) the property on which the trampoline was located.  Thus, Greg had no duty to warn Dawn of trampoline defects--if any--irrespective of his knowledge of such defects.  Accordingly, we conclude that the trial court did not err by granting summary judgment in Greg's favor.  See <u>Turner v. Northern Illinois Gas Co.</u>, 401 Ill. App. 3d 698, 705, 930 N.E.2d 418, 425 (2010) (summary judgment is appropriate when a plaintiff fails to provide facts from which a court can infer the existence of a duty).

3. <u>A</u> <u>Suggested</u> <u>Checklist</u> <u>for</u> <u>Summary-Judgment</u> <u>Practice</u>

All too often, deficiencies in a nonmoving party's response to a movant's motion for summary judgment results--as in

this case--in a trial court's grant of summary-judgment and the resulting affirmation on appeal.  Thus, a better practice might be for counsel to adopt a checklist--similar to the rules that attorneys must follow in summary-judgment proceedings held in federal court--to minimize, if not eliminate, such deficiencies.

For example, local rule 7.1(D)(2) of the United States District Court, Central District of Illinois, requires that responses in opposition to a motion for summary judgment contain the following: (1) an introduction, summarizing the legal and factual basis for the opposition, which includes an explicit statement of the relief sought; (2) separate sections outlining (a) undisputed material facts, (b) disputed material facts, (c) disputed immaterial facts, (d) undisputed immaterial facts, and (e) additional material facts; and (3) an argument section that responds directly to the movant's argument for summary judgment by identifying each disagreement with a proposed point of law and why the movant's summary-judgment motion should not be granted. C.D. Ill. Ct. R. 7.1(D)(2) (eff. January 20, 2010).

Employment of such a checklist, although not mandatory, would undoubtedly assist attorneys filing and opposing summary-judgment motions by forcing them to efficiently and effectively focus their respective arguments on the central concern underlying such motions, which is whether a genuine issue of material fact is present on the record before the trial court.  Moreover, such a tightly focused presentation to the court would also result in (1) the efficient use of scarce judicial resources and

(2) a better and clearer record on appeal, assuming summary judgment is granted.

### B. Dawn's Claim That the Trial Court Erred by Denying Her Motion To Reconsider

Dawn next argues that the trial court erred by denying her motion to reconsider. We disagree.

"The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law." Stringer v. Packaging Corp. of America, 351 Ill. App. 3d 1135, 1140, 815 N.E.2d 476, 481 (2004). When a movant seeks reconsideration based on newly discovered evidence, "a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable." Stringer, 351 Ill. App. 3d at 1141, 815 N.E.2d at 481. A trial court's decision to grant or deny a motion to reconsider lies within its sound discretion, and this court will not disturb such a ruling absent an abuse of discretion. Stringer, 351 Ill. App. 3d at 1140, 815 N.E.2d at 481.

In this case, Dawn contends that Kimberly's affidavit was not presented to the trial court at the March 2009 summary-judgment hearing because although Kimberly "was known to the parties, no one knew she had any knowledge of the owner of the trampoline until she raised it in a discussion with [Dawn] after the [court's] ruling on the [summary-judgment] motion." However, Dawn's assertion fails to reasonably explain why her conversation

- 12 -

with Kimberly could not have taken place during the 46 months that elapsed from the time she filed her May 2005 complaint until the March 2009 hearing on the motion for summary judgment, yet she acquired Kimberly's signed affidavit 10 days after the court granted summary judgment.

In this regard, we reaffirm the following rationale underlying the requirement that a movant provide a reasonable explanation, justifying why evidence presented at a hearing on a motion to reconsider was not available at the time of the original hearing:

> "'Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.  Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency require that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be.'"  (Emphasis in original.)  Stringer, 351 Ill. App. 3d at 1141, 815 N.E.2d at 481, quoting Gardner v. Navistar International Transportation Corp., 213 Ill. App. 3d 242, 248-49, 571 N.E.2d 1107, 1111 (1991).

Accordingly, because Dawn failed to reasonably justify why Kimberly's affidavit was not available or unobtainable at the

- 13 -

time of the March 2009 summary-judgment hearing, we conclude that the court did not abuse its discretion by denying Dawn's motion to reconsider.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's grant of summary judgment in Greg's favor.

Affirmed.

KNECHT, P.J., and POPE, J., concur.