# Illinois Official Reports

## Appellate Court

*O'Toole v. Chicago Zoological Society*, 2014 IL App (1st) 132652

| | |
|---|---|
| Appellate Court Caption | KRISTINE O'TOOLE, Plaintiff-Appellant, v. THE CHICAGO ZOOLOGICAL SOCIETY, d/b/a Brookfield Zoo, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-2652 |
| Filed | August 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's negligence complaint for the injuries she suffered in a fall at defendant zoo was improperly dismissed as untimely pursuant to the one-year statute of limitations applicable under the Tort Immunity Act, since the zoo is not a local public entity to which the Act's one-year limitations period applies; rather, it operates on land owned by the Forest Preserve District of Cook County pursuant to an agreement with the district, and, therefore, the dismissal was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-L-8354; the Hon. John P. Kirby, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | William J. McMahon and George T. Brugess, both of Hoey & Farina, P.C., of Chicago, for appellant. |
| | |
| | Michael Resis and Nicholas G. Kourvetaris, both of SmithAmundsen LLC, of Chicago, for appellee. |
| | |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Epstein concurred in the judgment and opinion. |

**OPINION**

¶ 1      This appeal arises from the circuit court's order dismissing plaintiff's complaint as untimely pursuant to section 2-619(a) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a) (West 2010)). Plaintiff Kristine O'Toole filed a single-count negligence complaint against defendant, the Chicago Zoological Society, d/b/a Brookfield Zoo, within two years of sustaining personal injuries at the zoo. The circuit court, however, apparently agreed with defendant's contention that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2010)) applied to defendant, and thus, that act's one-year statute of limitations barred plaintiff's action. On appeal, plaintiff asserts that the circuit court erred by dismissing the complaint because defendant did not constitute a local public entity, as required to benefit from the Tort Immunity Act's shorter statute of limitations. We agree, as the government neither owned defendant nor controlled its daily operations.

¶ 2                            I. BACKGROUND

¶ 3      On July 26, 2012, plaintiff filed a complaint alleging that while visiting defendant's premises on August 7, 2010, she tripped on the pavement, causing severe personal injuries. In addition, plaintiff alleged that defendant, through its negligent acts or omissions, breached its duty to exercise reasonable care to maintain and operate the premises, proximately causing plaintiff's fall and injuries.

¶ 4      Defendant subsequently moved to dismiss the complaint pursuant to section 2-619 of the Code, arguing, in pertinent part, that the complaint filed almost two years after plaintiff's injury occurred was not timely. Specifically, defendant argued that it constituted a local public entity, to which the Tort Immunity Act's one-year statute of limitations applied (745 ILCS 10/8-101(a) (West 2010)), because defendant was a "not-for-profit corporation organized for the purpose of conducting public business" (745 ILCS 10/1-206 (West 2010)). But see *Borg v. Chicago Zoological Society*, 256 Ill. App. 3d 931, 932-33 (1993) (where defendant argued that the two-year statute of limitations applied). In support of its allegation that it conducted public business, defendant further alleged that it was organized for the purpose of maintaining a zoo on land owned by the Forest Preserve District of Cook County (the District), and pursued an activity that benefitted the entire community without limitation. In addition, defendant argued

that pursuant to the Cook County Forest Preserve District Act (the District Act) (70 ILCS 810/1 *et seq.* (West 2010)), the District could permit defendant to maintain a zoo on the District's land subject to the District's control and supervision. Defendant also alleged that an agreement formed between defendant and the District in 1986 gave the District control over defendant's operation and maintenance of the zoo.

¶ 5    Attached to the motion was the 1986 agreement for defendant to maintain and operate a zoo on the District's land. The agreement stated that defendant was organized for the purpose of maintaining, and operating a zoo in Cook County, "making collections of animals and promoting zoology and kindred subjects and for the instruction and recreation of the people." In furtherance of the agreement, defendant would provide animals and collections, and devote all funds, donations and income to the establishment, maintenance, operation and development of the zoo. Defendant was also required to operate and maintain the zoo, as well as its buildings, structures, enclosures and other property. In addition, the District would levy and collect taxes needed for maintenance and operation of the zoo and defendant would annually submit an itemized budget. Defendant did not require approval, however, with respect to expenditures made from financial sources other than the District. Moreover, the agreement provided that from the funds budgeted by the District, defendant shall do the following:

> "[S]elect and provide all animals, equipment, materials and supplies necessary and proper to carry out the purpose of this agreement, and *shall have entire control and management*, of said [zoo] and its collections, and shall appoint, employ, direct, control, promote or remove all persons engaged in the management, care or operation of [the zoo], and shall fix and pay their respective salaries and compensation." (Emphasis added.)

Defendant could also grant privileges and concessions with the District's approval of rates and times of operation. Additionally, the agreement required the zoo to be free to the public once a week and at all times for school groups, as required by the District Act (see 70 ILCS 810/40 (West 2010)), and set the maximum visitors fee to be charged at the time the agreement was executed.

¶ 6    The agreement also placed certain restrictions on defendant's control of the property itself. Defendant could not, without the District's consent, encumber or remove any building, enclosure, structure, animal, or any property within the zoo. With limited exceptions, no living trees could be cut down or removed without the District's consent. In addition, all property purchased by defendant with District funds constituted property of the District but defendant could improve its collections through the exchange or sale of animals not needed for exhibition.

¶ 7    Furthermore, the agreement provided that the president of the board of commissioners of the District (District's Board) would be an *ex officio* member of the defendant's board of trustees and would select three other members of the District's Board to join him as *ex officio* governing members of defendant. The commissioners of the District and the heads of departments were also granted access to the zoo at all times for general police visitation and supervision, with due regard for the animals' welfare. In addition, the agreement provided that every 20 years, either party could choose to terminate the contractual relationship. Moreover, the agreement stated as follows:

> "By virtue of *the Society having the entire control and responsibility and management as well as the operation and maintenance* of the aforesaid and described

area, and the collections maintained thereon, it is further understood and agreed that the Society shall cause to be procured a policy, or policies of public liability and property damage insurance wherein the District shall be identified as one of the named insured with general public liability coverage for personal injury ***." (Emphasis added.)

Defendant also attached to its motion two cases in which the circuit court of Cook County had determined that defendant was a local public entity entitled to benefit from the Tort Immunity Act.

¶ 8 In response, plaintiff disputed that defendant constituted a local public entity to which the Tort Immunity Act's one-year statute of limitations applied because defendant did not conduct public business. Plaintiff relied on defendant's response to plaintiff's requests to admit facts. Specifically, defendant had stated that it was not a department of any government and was not created by a government entity but it did not operate entirely separately from the District, which reviewed defendant's annual budget. In addition, although defendant's board of trustees had a role in the development of certain unidentified policies pertaining to the zoo's operation, over 90% of defendant's board of trustees and governing members were neither employees nor elected officials of the District. In addition, defendant denied that the District had no role in the zoo's operation or maintenance, again citing the District's requisite approval of the budget, but admitted that defendant received less than 50% of its revenue from tax funds raised by the District. Furthermore, defendant's pleading acknowledged that it employed and directly paid over 200 nonpublic employees, who did not benefit from a state pension or workers' compensation. Defendant also followed the Occupational Safety and Health Administration's (OSHA) guidelines, which did not apply to government employers. See 29 U.S.C. § 652(5) (Supp. IV 1998).

¶ 9 Defendant's reply in support of the motion to dismiss argued that it was organized for the purpose of conducting public business because it pursued an activity that benefits the entire community and was directly owned by the District. Following a hearing, the transcript of which is not included in our record on appeal, the circuit court granted defendant's motion to dismiss with prejudice. Although the court's order was brief, the parties agree on appeal that the court dismissed the complaint as untimely.

¶ 10                                        II. ANALYSIS

¶ 11 On appeal, plaintiff asserts the circuit court erred in granting defendant's motion to dismiss the complaint as untimely because defendant was not a local public entity to which the Tort Immunity Act's one-year statute of limitations applied. We review the circuit court's dismissal of a complaint pursuant to section 2-619 *de novo*. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267 (2010). A section 2-619 motion admits the sufficiency of the complaint, but asserts an affirmative matter that defeats the plaintiff's claim. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. In addition, the failure to act in a timely manner is one such affirmative matter. *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 23. In considering a section 2-619 motion, courts must consider all pleadings and supporting documentation in the light most favorable to the nonmovant, in this case, plaintiff. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. The question is whether a genuine issue of material fact exists that precludes dismissal. *Betts v. City of Chicago*, 2013 IL App (1st) 123653, ¶ 13.

¶ 12    The Tort Immunity Act was created to protect "local public entities" and their employees from liability that arises from the operation of government. 745 ILCS 10/1-101.1 (West 2010). In addition, section 8-101(a) of the Tort Immunity Act, with limited exceptions not applicable here, provides that no civil action for injury may be brought against a local public entity or its employees unless brought within one year of the date on which the injury occurred or the cause of action accrued. 745 ILCS 10/8-101(a) (West 2010).[1] Section 8-101(a) encourages the early investigation of claims against local governmental entities, while evidence is fresh, in order to permit the prompt settlement of meritorious claims and allow local governmental entities to consider potential liability in planning their budgets, as such entities must anticipate that the claims against it will far exceed claims brought against private individuals. *Hubble*, 238 Ill. 2d at 279.

¶ 13    Under section 1-206, the term "local public entity" is broadly defined. *Id*. at 269. That definition includes several specifically enumerated entities and local governmental bodies not at issue here. 745 ILCS 10/1-206 (West 2010). Section 1-206 also provides, however, that a "local public entity" includes "any not-for-profit corporation organized for the purpose of conducting public business." 745 ILCS 10/1-206 (West 2010). While there is no dispute that defendant is a not-for-profit corporation, the parties dispute whether defendant conducts public business.

¶ 14    In *Carroll v. Paddock*, 199 Ill. 2d 16, 17 (2002), our supreme court was asked to decide whether a not-for-profit charitable hospital and a not-for-profit mental-health-care organization were local public entities under section 1-206. In answering that question in the negative, the supreme court grappled with the meaning of public business. *Id*. at 25-28. The court found that status as a not-for-profit charitable corporation does not itself qualify a corporation as a local public entity. *Id.* at 26. In addition, while many private endeavors improve or affect the public *interest*, that alone will not render a private enterprise a public *business*. *Id*. at 27. Furthermore, the court essentially found that an organization's funding should not be given too much weight, as the statute expressly required the inquiry to focus on the purpose for which the entity was organized, not how it was funded. *Id*. at 25. Moreover, the supreme court adopted the definition of "public" as set forth by the appellate court in *O'Melia v. Lake Forest Symphony Ass'n*, 303 Ill. App. 3d 825 (1999). *Carroll*, 199 Ill. 2d at 25-28.

¶ 15    As defined by *O'Melia* and *Carroll,* "public" refers to a whole community or body of people and does not limit its application to a restricted class. *Id*. at 25; *O'Melia*, 303 Ill. App. 3d at 828. As a result, conducting public business requires that a corporation pursue an activity that benefits the whole community, without restriction. *Carroll*, 199 Ill. 2d at 25-26; *O'Melia*, 303 Ill. App. 3d at 828. In addition, "public business" is commonly understood to refer to the government's business. *Carroll*, 199 Ill. 2d at 26; *O'Melia*, 303 Ill. App. 3d at 828. Accordingly, the supreme court found that a corporation does not conduct public business absent evidence of local governmental control. *Carroll*, 199 Ill. 2d at 26. Furthermore, the corporation must "be subject to the kinds of organizational regulations and control that are typical of other governmental units." *Id*. As examples, the supreme court stated that a corporation's required adherence to the Open Meetings Act (5 ILCS 120/1.01 *et seq*. (West

---

[1]We note that while section 8-101 refers to a "local entity," as opposed to a "local public entity," the latter term was indisputably intended. See *Hubble*, 238 Ill. 2d at 278-79 (stating that section 8-101(a) provided a "local public entity" with a one-year statute of limitations).

2000)) or the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2000)) could constitute *indicia* of the requisite governmental control. *Carroll*, 199 Ill. 2d at 26. Similarly, the requisite control could be indicated by local ordinances dictating how the corporation conducted its business or evidence that the corporation's governing body was controlled by county board members or other local governing bodies. *Id*. at 27. As applied to the facts before it, the supreme court observed that the defendants' respective boards of directors consisted solely of private citizens and there was no evidence suggesting that the defendants were subject to the county's control. *Id*. at 26. The court stated, "a not-for-profit is involved in the operation of the government's public business if and only if the not-for-profit is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government." *Id*. at 27.

¶ 16    Shortly thereafter, in *Brugger v. Joseph Academy, Inc.*, 202 Ill. 2d 435, 436-38 (2002), the supreme court was asked to reconsider the criteria set forth in *Carroll* and to determine whether a private, not-for-profit corporation that served special education students through contracts with local public school districts constituted a local public entity. In reaffirming its prior analysis in *Carroll*, the court reiterated that in order for a corporation to demonstrate that it conducts public business, it must show that its activity benefits the whole community without limitation and that it is tightly enmeshed with the government through direct government ownership or the local government's operational control. *Id*. at 445. The court also rejected the defendant academy's argument that such analysis was overly restrictive because no not-for-profit corporation could ever qualify for immunity. *Id*. at 439-40, 445. Specifically, the court approved of the appellate court's decision in *Barnes v. Chicago Housing Authority*, 326 Ill. App. 3d 710, 714 (2001), which determined that a resident management corporation was a local public entity. *Brugger*, 202 Ill. 2d at 439-40.

¶ 17    In discussing *Barnes*, the supreme court noted that resident management corporations were recognized under a federal program that (1) required each corporation to contract with the public housing agency to establish the entities' respective management rights and responsibilities; and (2) permitted such contracts to include specific terms regarding the management of personnel, compensation, access to records, submission of budgets and regular procedures. *Id*. In addition, the supreme court found that federal regulations, pertaining to matters such as eligibility for resident counsel membership and election procedures, further governed the interaction between a resident management corporation and the public housing authority. *Id*. at 440. "Such close interaction and comprehensive governmental control of a not-for-profit corporation exemplify the characteristics of the type of organization that may be able to qualify for immunity as a 'local public entity.' " *Id*.

¶ 18    The supreme court rejected the defendant academy's reliance on nineteenth-century case law concerning the common law concepts of quasi-public corporations and public service corporations, essentially suggesting that those terms, and the cases interpreting them, had no bearing on the construction of "public business" as defined in the Tort Immunity Act. *Id*. at 441-42. In addition, the supreme court stated, arguably as *dicta*, that the defendant would not be a quasi-public corporation because it needed no public property to conduct its business, did not provide services to the entire community and could accept or reject any student. *Id*. at 442-43. Finally, the supreme court concluded that the academy was not engaged in public business because (1) the academy was required to satisfy regulations and contractual requirements only because it chose to contract with public schools; (2) the academy was not

subject to local government's operational control, as it maintained autonomy in daily operations; (3) no government entity or official participated on the board in an official capacity; and (4) the academy did not receive payments from the state budget and the amount of its revenue depended on the number of students it chose to accept, not a state budgetary allowance. *Id.* at 447-48.

¶ 19    More recently, in *Hubble*, 238 Ill. 2d at 268, 271, our supreme court found that a defendant interstate compact entity, created pursuant to the United States Constitution, conducted public business within the meaning of the Tort Immunity Act. The Bi-State Development Compact Act stated that the defendant was created to perform governmental or public functions and would be a " 'body corporate and politic.' " *Id.* at 272 (quoting 45 ILCS 100/1 (West 2006)). That act also stated that the defendant had the power to (1) plan, maintain, and construct bridges, airports and terminal facilities; (2) plan the coordination of streets and highways; (3) collect fees; (4) issue bonds; (5) receive contributions from all levels of government; and (6) perform all other necessary and incidental functions, and exercise any additional powers granted by state legislatures. *Hubble*, 238 Ill. 2d at 272-73 (citing 45 ILCS 100/1 (West 2006)). Furthermore, the defendant had no shareholders, was composed of commissioners chosen by Illinois and Missouri government officials, was funded by public and user fee revenue, and operated a transit system in the public interest. *Hubble*, 238 Ill. 2d at 271. The court also considered federal authority finding the defendant was a local governmental entity or public body. *Id.* at 274.

¶ 20    Having considered the aforementioned case law and the record in the light most favorable to plaintiff, we agree with her contention that defendant has not shown that it engages in public business. While the 1986 agreement stated that defendant was organized to operate a zoo for the instruction and recreation of the public, the zoo's furtherance of the public's interest is not synonymous with conducting public business within the meaning of the Tort Immunity Act. See *O'Melia*, 303 Ill. App. 3d at 829. In addition, defendant has not demonstrated that it is tightly enmeshed with the government through direct government ownership or the local government's operational control.

¶ 21    As to direct ownership, the District owns the land on which defendant operates its business, but does not own the business itself or all property used to operate said business. Contrary to defendant's suggestion, the agreement shows only that the District owned property purchased with District funds. In addition, while the supreme court observed in *Brugger* that the defendant could not be a quasi-public corporation because it did not depend on public property, the court did not find that dependence on government property renders a business public *per se*. *Brugger*, 202 Ill. 2d at 442-43. Moreover, the court indicated that the term quasi-public corporation was not synonymous with the term public business as used in the Tort Immunity Act. *Brugger*, 202 Ill. 2d at 442-43. Accordingly, defendant has not shown that it was directly owned by the District, notwithstanding defendant's use of District property.

¶ 22    We also find defendant has not shown the District had operational control over defendant. The District was authorized by statute to contract with defendant for the erection and maintenance of a zoo. While section 40 of the District Act stated that the District's corporate authorities had control or supervision over the forest preserve itself, the statute also stated, in pertinent part, that the District may "contract with the directors or trustees of any zoological society on such terms and conditions as may to such corporate authorities seem best, relative to the erection, operation and maintenance of a zoological park and the collection and display of

such animals within such forest preserve." 70 ILCS 810/40 (West 2010). Pursuant to the discretion granted by that statute, the District entered into a contract with defendant. That contract provided that defendant "shall have entire control and management" of the zoo and that defendant had "the entire control and responsibility and management as well as the operation and maintenance" of the zoo's land and collections. The contract also provided that defendant "shall appoint, employ, direct, control, promote or remove all persons engaged in the management, care or operation of [the zoo] and shall fix and pay their respective salaries." *Cf. Brugger*, 202 Ill. 2d at 439-40 (observing that the resident management corporation found to be a local public entity in *Barnes* was required to enter into a contract including specific terms regarding management personnel and compensation). In addition, the agreement required defendant to operate and maintain the zoo's buildings, structures, enclosures and other property. Thus, the District delegated control of the zoo's daily operations to defendant. See *Brugger*, 202 Ill. 2d at 447-48 (in finding that the defendant academy did not engage in public business, the supreme court observed that it had autonomy in daily operations); *cf. Corral v. Chicago Park District*, 277 Ill. App. 3d 357, 359 (1995) (observing that the Lincoln Park Zoo was run by the Chicago Park District, and the parties did not dispute that the park district was a local public entity).

¶ 23 To that end, only four members of the District's Board were required to participate on defendant's governing bodies, and over 90% of defendant's trustees and governing members were not employed by the District. *Cf. Hubble*, 238 Ill. 2d at 271 (finding that an interstate compact entity conducted public business where it was composed of commissioners chosen by government officials). Defendant could also grant privileges and concessions, albeit with the District's approval of rates. In addition, the District's ability to restrict defendant's removal and encumbrance of property and to set visitors' fees does not show the type of control relevant to our determination. A contractual restriction on a tenant's removal of buildings and structures is not unique to government. Furthermore, any landowner would have an interest in seeing that its property was used productively. Similarly, it is hardly surprising that a landowner would be given access to its property for general policing and supervision where that property is visited by the public and contains animals both dangerous and vulnerable.

¶ 24 To the extent that defendant was required to submit an annual itemized budget, defendant did not need approval with respect to expenditures made from non-District funds, *i.e.*, potentially half of defendant's expenditures. It's also not surprising that the District would want to see how money it contributed was being spent, particularly since property purchased with such money would belong to the District. Although not a substantial factor in our determination, we find it telling that less than half of defendant's funding was derived from the District, including funds procured through taxes. *Brock v. Chicago Zoological Society*, 820 F.2d 909, 913 (7th Cir. 1987) (finding that the record did not suggest "the District uses its purse-string powers to usurp the Society's contractually-secured management powers").

¶ 25 We also find that defendant has not shown it was subject to regulations typical of governmental units. While section 40 of the District Act, and in turn the parties' agreement, required the zoo to regularly be free to school groups and to be free to the public once a week, this arguably constitutes a restriction on the District's authority to contract with defendant, rather than a direct statutory restriction on defendant. Specifically, Illinois legislation appears to contemplate the potential operation of zoos on private property. See 720 ILCS 5/48-10(b) (West 2012) (permitting zoological parks, without reference to a zoo's public or private status,

to have property rights in dangerous animals); 765 ILCS 1033/10 (West 2012) (including zoos within the definition of museums for purposes of the Museum Disposition of Property Act, without regard to public or private status); 775 ILCS 5/5-101(A) (West 2012) (defining "place of public accommodation" for purposes of the Illinois Human Rights Act to include zoos as well as other potentially privately owned and operated entities). In addition, although defendant's motion alleged that defendant was organized to maintain a zoo on the District's land, the agreement stated only that defendant was organized to maintain a zoo in Cook County, not necessarily on District land. See *Brock*, 820 F.2d at 911 ("Though state officials were instrumental in the founding of the Society, they deliberately designed it as a private entity to be operated independently of the District and other state agencies."). Furthermore, the parties' agreement provided that every 20 years, either party could choose to terminate the contract. As a result, defendant was required to satisfy section 40 of the District Act only because it chose to contract with the District to operate a zoo on the District's land. See *Brugger*, 202 Ill. 2d at 447-48. Moreover, defendant's employees were not entitled to a State pension or workers' compensation, and defendant followed OSHA guidelines. See *Joyce v. Mastri*, 371 Ill. App. 3d 64, 76 (2007) (OSHA created a government program to enforce private employers' compliance with federal standards); see also *Carroll*, 199 Ill. 2d at 27 (finding that a not-for-profit hospital and a not-for-profit mental-health-care organization were not the same as public facilities operated by public employees under the control of the government).

¶ 26 Finally, we are not persuaded by the circuit court decisions finding defendant to be a local public entity. See Schewe v. Forest Preserve District, No. 2008 L 001879 (Cir. Ct. Cook Co.); Parrott v. Chicago Zoological Society, No. 2010 L 007326 (Cir. Ct. Cook Co.); see also *Schewe v. Forest Preserve District*, No. 1-09-1069 (2009) (appeal dismissed for want of prosecution). Although we are not bound by circuit court decisions, we note that neither case considered factors showing defendant's control of daily operations or the District's minority representation in defendant's governing bodies. See *Brugger*, 202 Ill. 2d at 447-48 (finding that the academy maintained autonomy in daily operations). Accordingly, we respectfully disagree with our esteemed colleagues' determination.

¶ 27                                    III. CONCLUSION

¶ 28 In conclusion, while the District may have some limited oversight of defendant, this oversight does not amount to the control over daily operations contemplated by the Tort Immunity Act's reference to public business. In addition, defendant is not owned by the District. It follows that defendant does not constitute a local public entity. As a result, we need not consider the parties' arguments as to whether defendant benefited the entire community. Because defendant is not a local public entity to which the Tort Immunity Act's one-year statute of limitations applies, the complaint was timely filed (see 735 ILCS 5/13-202 (West 2010)), and genuine issues of material fact exist with regard to the complaint's merits.

¶ 29 For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 30 Reversed and remanded.